JAMES IVEY v. STATE.

180 So. 368.
Division B.
Opinion Filed April 7, 1938.

*Frank Redd* and *Clyde H. Wilson,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, and *Tyrus A. Norwood,* Assistant Attorney General, for the State.

CHAPMAN, J.—Plaintiff in error, James Ivey, was convicted of murder in the second degree in the Circuit Court of Sarasota County, Florida, on May 14, 1937, for the un-

lawful killing of one Henry Dorsey, and was sentenced to the State Penitentiary for a period of his natural life. He has perfected his appeal to this Court and seeks a reversal of the judgment against him on a number of assignments.

Counsel for plaintiff in error assigns as error certain questions propounded to the defendant while on the stand as a witness by counsel for prosecution. The material questions propounded on cross examination are:

"Q. Have you at any time been convicted of any crime?

"A. Well, I have been convicted one time. I made 60 days about three years ago.

"Q. What was that for?

"A. Well I run into a garage and a man followed me and he carried out an old T motor valve and I didn't know nothing about it until they told me about it and I didn't have nothing to do with it, but they gave me 60 days around the jail.

"Q. You have not been convicted of shooting anybody previously, have you?

"A. No, sir.

"Q. How old a man are you?

"A. I am right around 34.

"Q. What is your business; what business are you engaged in?

"A. Well, I do trucking work and hauling all over town; moving and setting and trees and hauling black dirt and fertilizer and cutting up fields and harrowing.

"Q. Have you been making a living at it?

"A. Yes, sir, I have been making a pretty good living

"Q. How long have you lived in Sarasota?

"A. I have been living here about four years.

"Q. Have you been on relief any of that time?

"A. No, sir, I never have worked at any relief work.

"Q. You worked at your own work, pursuing your own work, supporting your own family and supporting your own home?

"A. Yes, sir.

"Q. That's doing pretty good for a nigger in comparison with some white folks?

"A. Yes, sir, I hope it is.

"Q. The only thing you have been in trouble about is that old motor valve that you spent 30 days in jail for?

"A. Sixty days.

"Q. In the stockade?

"A. No, sir, right around the Court house.

"Q. Right around the Court House—they made you a trusty, is this right?

"A. Yes, sir.

On cross-examination by State Attorney Williford:

"Q. Ivey, you testified on your direct examination that you had lived out there peaceably and quietly during the whole time you lived there and that you had only been in trouble once and that was about the motor valve that you were accused of stealing and that you had discovered this other fellow had taken, is that right?

Mr. Redd, counsel for defendant, objected to question; the Court overruled objection and noted exception.

"Q. Didn't you forget the time you got in trouble on January 16th, 1936, for assault and battery and that you were arrested for that?

Counsel for defendant objected to question; the Court overruled the objection and noted exception.

"Q. Answer the question; didn't you forget about that time you were arrested by the sheriff for assault and battery in January last year?

"A. Which sheriff?

"Q. The Sheriff of Sarasota County. Do you remember that now?

"A. I don't remember of my fighting anybody—it might have been.

"Q. You might have been arrested but you don't remember it?

"A. No, sir, not for fighting nobody.

"Q. For assault and battery?

"A. No, sir."

It will be observed that the defendant's counsel on direct examination propounded to the defendant the question: "The only thing you have been in trouble about is that motor valve that you spent 30 days in jail for?" The questions assigned as error were propounded on cross-examination. The questions objected to as disclosed by the record had as their objective not only to cover the field of inquiry made by the general scope of the direct examination, but to test the memory of the witness and the accuracy of his testimony. It is true by Section 4373, C. G. L., a defendant on trial may be asked if he has been convicted of crime and if it is denied, the record can be admitted in evidence to contradict the statement if one was made. Counsel for defendant was not required to ask the question, *supra,* thereby opening the gate for a thorough and comprehensive cross-examination on this point. We fail to see where the questions and answers were to the detriment of the rights of the defendant, but justice required that the jury should have a full knowledge of the defendant's activities over the years, which counsel for defendant thought was advantageous to his cause and for the jury to have when considering the issues.

It is next contended that the lower court erred in refusing to permit or allow certain evidence to go to the jury detailing

the facts existing at the time the fatal shot was fired and prior thereto. Likewise it is contended that the deceased and the witness, Elizabeth Ivey, were fighting and possibly the homicide was committed by Elizabeth Ivey.

We have read the evidence about the admittance of the deceased into the room or apartment of Elizabeth Ivey and we fail to find any testimony or reasonable inference therefrom to the effect that the death of Henry Dorsey was caused by her. The evidence shows cordiality or friendship existing between them and no animosities whatsoever. We have examined other assignments based upon the admission or rejection of testimony. While some of the rulings of the lower court may be subject to the criticism offered, but considering the same in the light of all the evidence in connection with the case at bar, we do not think reversible error was committed.

Counsel for plaintiff in error contends that the lower court erred in denying defendant's motion for a directed verdict. We have considered all the evidence before the lower court when the motion urged here was ruled upon. We think the lower court ruled correctly in denying the motion. The evidence shows that Henry Dorsey was killed while in the apartment of Elizabeth Ivey. Witnesses heard a pistol shot and shortly thereafter another shot when Elizabeth Ivey was tussling with the defendant for the possesion of the pistol. The defendant admitted firing a shot into the room occupied by Elizabeth Ivey and Henry Dorsey. This Court, when considering a motion for a directed verdict in the case of Gravette v. Turner, 77 Fla. 311, text 314-16, 81 So. 476, said:

"In directing a verdict the court is governed practically by the same rules that are applicable in demurrer to evidence. 89 U. S. 116.

"A party moving for a directed verdict admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence. Gunn v. City of Jacksonville, 67 Fla. 40, 64 South. Rep. 435. When the facts are not in dispute, and the evidence, with all inferences that a jury may lawfully deduce from it, does not, as a matter of law, have a tendency to establish the cause of action alleged, the judge may direct a verdict for the defendant. But the court should never direct a verdict for one party unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law. Where there is room for difference of opinion between reasonable men as to the proof or facts from which an ultimate fact is sought to be established, or where there is room for such differences as to the inferences which might be drawn from conceded facts, the court should submit the case to the jury for their finding, as it is their conclusion, in such cases, that should prevail, and not primarily the views of the judge. In an action for negligence where there is any substantial testimony from which the jury could find the issues in favor of the plaintiff, a peremptory charge for the defendant should not be given. A case should not be taken from the jury by directing a verdict for the defendant on the evidence, unless the conclusion follows as a matter of law that no recovery can be lawfully had upon any view taken of facts that the evidence tends to establish. The credibility and probative force of conflicting testimony should not be determined on a motion for a directed verdict. The duty devolving upon the court in reference to directing a verdict on the evidence may become, in many cases, one of delicacy, and it should be cautiously exercised. Gunn v. City of Jacksonville, *supra;* Logan Coal and Supply Co. v. Hasty,

68 Fla. 539, 67 South. Rep. 72; Davis v. Drummond, 68 Fla. 471, 67 South. Rep. 99; Poore v. Starr Piano Co., 68 Fla. 425, 67 South. Rep. 99; King v. Cooney-Eckstein Co., 66 Fla. 246, 63 South. Rep. 659; Hammond v. Jacksonville Electric Co., 66 Fla. 145, 63 South. Rep. 709; Starks v. Sawyer, 56 Fla. 596, 47 South. Rep. 513."

Assignments of error 10, 11, 12, 13 and 14 are each predicated on the refusal of the lower court to give the jury certain instructions requested by the defendant. We have considered the instructions given by the court, as well as those requested to be given on the part of the defendant, and by the trial court denied. When passing upon a single instruction or charge it should be considered with all other instructions. The rule is well expressed by this Court in the case of Lewis v. State, 55 Fla. 54, text 63-64, 45 So. 998, when this Court said.

"It is settled law in this Court that in passing upon a single instruction or charge it should be considered in connection with all other instructions and charges bearing on the same subject, and if, when thus considered, the law appears to have been fairly presented to the jury, an assignment predicated upon the giving of such instruction or charge must fail, unless all the peculiar circumstances of the case the court is of the opinion that such instruction or charge was calculated to confuse, mislead or prejudice the jury. Atlantic Coast Line Co. v. Crosby, 53 Fla. 400, 43 South. Rep. 318, and authorities therein cited; Davis v. State, 54 Fla. 34, 44 South. Rep. 757; Atlantic Coast Line R Co. v. Beazley, 54 Fla. 311, 45 South. Rep. 761; Cross v. Aby, decided here at this term. It is also settled law here that where an instruction, as far as it goes, states a correct proposition of law, but is defective because it fails to qualify or explain the proposition it lays down in consonance with the facts of the case, such defect is cured if

previous or subsequent charges or instructions are given containing the required qualifications or exceptions. It is not required that a single instruction should contain all the law relating to the particular subject treated therein. Atlantic Coast Line R. Co. v. Crosby, *supra,* and authorities therein cited."

It is next contended that the lower court erred in denying defendant's motion for a new trial. The grounds from 1 to 5, inclusive, raise the question of the sufficiency of the evidence to sustain the verdict of the jury. The probative weight of the testimony was considered under the previous assignment of a denial of the trial court of the defendant's motion for a directed verdict. This Court has repeatedly held that a new trial will not be granted on the ground that the verdict is contrary to law and evidence, there being evidence to support the verdict, however conflicting the testimony of witnesses of the respective parties may be, unless it seems that great injustice will result. See Sherman v. State, 17 Fla. 888; Kirkland v. State, 93 Fla. 172, 111 So. 351; Whitton v. State, 93 Fla. 97, 111 So. 514; Armstrong v. State, 30 Fla. 170, 11 So. 618, 17 L. R. A. 484; Howell v. State, 102 Fla. 612, 136 So. 456.

Ground 6 of the motion for a new trial is the admission of testimony about the reputation of the defendant in the county where he resided for truth and veracity. The law permits a defendant in a criminal case to be sworn as a witness in his own behalf and shall be subject to cross-examination as other witnesses. See Section 8385 C. G. L. The reputation of the defendant for truth and veracity was not attacked by the prosecution in the lower court. When the defendant was sworn as a witness and gave testimony before the jury, his reputation for truth and veracity was made an issue. He could be cross-examined, attacked, contradicted, or impeached like any other witness called to the

stand during the trial of a cause. There was no error in this ruling. See Clinton v. State, 58 Fla. 23, 50 So. 580.

It is next contended that during the progress of the trial and when testimony was being received that one of the jurors, a Mr. Albritton, went to sleep, thereby not hearing pertinent portions of the testimony. It has not been made to appear here just what "pertinent portions" of the testimony was not heard by the juror at the time of a nap. We have no citation of authorities showing that it was reversible error for a juror to go to sleep during the progress of a trial. This assignment was raised for the first time in the motion for a new trial. The burden of showing error is on plaintiff in error and this burden has not been met. We think substantial justice was awarded in the court below and for this reason the judgment appealed from is hereby affirmed.

ELLIS, C. J., and WHITFIELD, TERRELL and BUFORD, J. J., concur.

BROWN, J., dissents.