294 So.2d 392 (1974)
John Alvin BAXTER, Appellant,
v.
STATE of Florida, Appellee.
No. 72-1198.
District Court of Appeal of Florida, Fourth District.
May 3, 1974.
Rehearing Denied June 5, 1974.
Ray Sandstrom of Sandstrom & Hodge, Fort Lauderdale, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and C. Marie Bernard, Asst. Atty. Gen., West Palm Beach, for appellee.
DOWNEY, Judge.
Appellant was convicted of murder in the first degree and sentenced to life imprisonment. The sole point on appeal warranting discussion is appellant's suggestion that the trial court erred "in permitting the state to attack the character reputation of the defendant by alleged reputation evidence where the defendant did not first put his character in evidence."
At trial appellant took the stand in his own defense and testified that while he disposed of the body of the deceased, someone else committed the murder. On rebuttal the state adduced the testimony of several police officers who testified they knew appellant's general reputation for truth and veracity in the community in which he lived and that it was bad. Appellant did not object to the interrogation of these witnesses as to their knowledge of appellant's reputation for truth and veracity, though he did move to strike certain gratuitous remarks of several witnesses which were inadmissible and which were stricken.
The problem here is that appellant has failed to distinguish between an attack upon the general character of a defendant in a criminal case where he has not put his general character in issue, and an attack upon the general reputation of a defendant for truth and veracity where the defendant testifies in his own behalf. The *393 latter is permissible while the former is not. Evidence of the bad character of an accused is admissible only after he has introduced evidence of his good character. Machara v. State, Fla.App. 1973, 272 So.2d 870; 1 Wigmore on Evidence, § 57 (3rd Ed. 1940); 13 Fla.Jur., Evidence, § 154. However, when a witness, whether a party or not, and whether the case be civil or criminal, takes the witness stand he ipso facto places his credibility in issue. Ivey v. State, 132 Fla. 36, 180 So. 368 (1938). That is the general rule, 29 Am.Jur.2d Evidence, § 341, and it has been the law of Florida at least since Clinton v. State, 53 Fla. 98, 43 So. 312 (1907), wherein the court stated:
"When the accused exercises the option given by statute of testifying as a witness, he thereby puts himself on the same footing as any other witness. * * * In other words, when the accused offers himself as a witness, he may be examined, cross examined, or impeached as any other witness. While this is true, it is also true that the state cannot introduce evidence to impeach the general character of the accused unless the accused has first put his character in issue." 43 So. at 316.
On a subsequent appearance of that case in the Supreme Court, 58 Fla. 23, 50 So. 580 (1909), in further elucidating the point it was said:
"Other assignments [of error] are upon the impeachment of the defendants, who voluntarily became witnesses at this trial. It is argued that they did not put their character in evidence, and therefore the state could not attack it. That well known rule has been wholly misunderstood by counsel. The state did not attack their general character; but their reputation for truth and veracity was made a possible issue when they took the stand as witnesses. This distinction was clearly drawn in the opinion upon the first appearance of the case in this court [43 So. 312], and the state kept clearly within the rule." Clinton v. State, 58 Fla. 23, 50 So. 580 (1909).
Of more recent vintage is Ivey v. State, supra, in which the rule was again followed.
Adverting to the case at bar, appellant became a witness in his own behalf and by so doing placed in issue his general reputation for truth and veracity. The state was then at liberty to attack his credibility by showing, not that his general character was bad, but that his reputation for truth and veracity was bad.
We have not overlooked appellant's complaint about several of the reputation witnesses' gratuitous remarks which were inadmissible. However, the court struck said remarks and admonished the jury to disregard them. In view of the evidence of appellant's prior conviction of two felonies and his admission of other criminal activity, it is our view that the trial judge's remedial action was adequate and no prejudice accrued to appellant.
Accordingly, the judgment and sentence appealed from is affirmed.
COWART, JOE A., Jr., Associate Judge, concurs.
WALDEN, J., dissents, with opinion.
WALDEN, Judge (dissenting):
Defendant was tried by jury, convicted and sentenced for first degree murder. He appeals. I would reverse and remand for a new trial as I feel the matter raised in his point two is meritorious, it being:
"Whether the court erred in permitting the state to attack the character of the defendant by alleged reputation evidence where the defendant did not first put his character in issue."
Defendant testified that someone else committed the murder. The testimony, had it been believed, would have led to his acquittal. Defendant did not put his character or reputation in issue.
On rebuttal three policemen were called to the witness stand by the state. They *394 testified in effect that they knew the defendant's reputation in the community  that it was bad  and that they would not believe the defendant under oath. A fourth police witness attempted to follow suit and, when it developed that he had never talked to people in the defendant's community, his testimony was stricken. He then testified:
"Q (By Mr. Olds [the prosecutor]) How did you learn of the reputation of Mr. Baxter?
"A From talking with persons arrested for crimes in the City of Fort Lauderdale.
"Q What type of crimes?
"A Burglary."
Then yet another police officer took the stand and testified that the defendant had a bad reputation and that he would not believe him on oath. The state then asked:
"Q (By Mr. Olds) You have heard about him ... about how many times?
"A Numerous times. We have an active file on Mr. Baxter."
The general and well established rule in Florida is correctly expressed in Jordan v. State, 107 Fla. 333, 144 So. 669 (1932):
"The character of a person accused of crime is not a fact in issue, and the state cannot, for the purpose of inducing belief in his guilt, introduce evidence tending to show his bad character or reputation, unless the accused, conceiving that his case will be strengthened by proof of good character, opens the door to proof by the prosecution that his character in fact is bad. This salutary rule is not permitted to be violated by the state, even when the defendant offers himself as a witness." 107 Fla. at 334, 144 So. at 669.
This rule is likewise expressed in encyclopedic treatment in 13 Fla.Jur. Evidence § 154 (1972):
"The mere fact that the defendant has offered himself as a witness does not mean that the state is free to introduce evidence of his bad character." Id.

Similar rules are expressed in 29 Am.Jur.2d Evidence §§ 340 and 341 (1967), and 22A C.J.S. Criminal Law § 676 et seq. (1961). See also, Andrews v. State, 172 So.2d 505 (1st D.C.A.Fla. 1965).
The majority draws a fine line between what it deems permissible  evidence of a general reputation relating to veracity  and impermissible  evidence as to some trait relating to the crime charged or evidence of a bad moral character. The distinction is without real or measurable difference. The testimony allowed against the defendant here surely was meant to, and did, show that his character was bad and not to refer only to the specific trait of veracity.
For the above reasons I respectfully dissent and say that I would reverse and remand for a new trial on acccount of the violation of a basic concept of criminal law evidence.