376 So.2d 937 (1979)
David H. BUTLER, Appellant,
v.
STATE of Florida, Appellee.
No. 78-1444.
District Court of Appeal of Florida, Fourth District.
November 15, 1979.
*938 Sheldon "Skip" Taylor, Miami, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Mary E. Marsden, Asst. Atty. Gen., West Palm Beach, for appellee.
GLICKSTEIN, Judge.
Appellant was tried and convicted of possession of marijuana in excess of one hundred pounds with intent to sell. On appeal he urges four grounds for reversal of his conviction, two of which require discussion:
I. Admission into evidence on rebuttal of a severed codefendant's address book to prove appellant knew said defendant, John Wylie.
II. Denial of a Motion for Mistrial predicated upon a question asked on cross-examination of appellant's character witness, regarding a prior arrest of appellant for a similar crime, to which objection was made and which the jury was instructed to disregard.
The facts reveal that appellant and Wylie were arrested on the beach of Hutchinson Island about midnight when both were found standing in front of their respective vehicles, a red Toyota land cruiser and a blue pick-up truck.
Nearby in the bushes were four bales of marijuana, totalling in excess of four thousand pounds. Also nearby were diving equipment and a Zodiac raft which had an outboard motor and the residue of vegetable matter with the odor of marijuana.
Appellant's jeep was equipped with a winch, to which was attached a lengthy cable. A pair of damp blue jeans was found in the vehicle, together with a CB radio. One hundred feet of white hose was found in Wylie's pick-up truck and four inches of the same material was found in the jeep. Neither vehicle had any marijuana in it.
There was considerable evidence to establish the existence of a smuggling operation on the night in question. Two boats had been seen offshore and had outrun a Coast Guard cutter. Numerous vans were in the general area, one of which appeared loaded down; another had its windows covered with contact paper and its Ryder identification covered; all had CB radios; and one had patching equipment for a Zodiac raft. A red Toyota land cruiser had been earlier spotted in a caravan between two white vans.
Appellant testified that he was registered in a motel south of the area in question because he had a business conference scheduled for the following morning to discuss real estate nearby. His explanation for his presence on Hutchinson Island was that while riding around after dinner for relaxation he had spotted Wylie walking along the road, and was told that Wylie's pick-up truck was stuck in the sand. He further testified that he pulled Wylie's truck out of the sand with the winch on the jeep and similarly pulled the Zodiac raft from the water's edge at Wylie's request.
Appellant denied ever knowing Wylie before that night's encounter.

I

THE ADMISSIBILITY OF WYLIE'S ADDRESS BOOK
The Sixth Amendment provides in part that:
"In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."
In Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), the Court held:
"We hold today that the Sixth Amendment's right of an accused to confront the witnesses against him is likewise a fundamental right and is made obligatory on the States by the Fourteenth Amendment.
It cannot seriously be doubted at this late date that the right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him. And probably no one, certainly no one experienced in the trial of lawsuits, would deny the value of cross-examination in exposing falsehood *939 and bringing out of the truth in the trial of a criminal case. See, e.g., 5 Wigmore, Evidence § 1367 (3d ed. 1940). The fact that this right appears in the Sixth Amendment of our Bill of Rights reflects the belief of the Framers of those liberties and safeguards that confrontation was a fundamental right essential to a fair trial in a criminal prosecution."
We held in Hill v. State, 330 So.2d 487 (Fla. 4th DCA 1976):
"It is a violation of the Confrontation Clause of the Sixth Amendment for the trial court to permit the jury to hear an individual's extrajudicial statement inculpating the defendant, if the individual refuses to testify on Fifth Amendment grounds, and if the refusal has not been procured by the defendant. Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). Cf. Rankin v. State, Fla. 1962, 143 So.2d 193. McDonald clearly refused to testify, and McDonald's tape clearly inculpated the appellant. The state has not asserted that appellant procured McDonald's refusal to testify. The trial court should therefore have sustained appellant's objection to having the tape played before the jury."
Here, the State was permitted to offer into evidence an address book which appellant concedes to be that of the severed codefendant, John Wylie. The purpose of its introduction was to prove by its contents that appellant knew Wylie in that appellant's name and address were contained within it. There is no testimony as to whether Wylie or someone else placed appellant's name in the address book; but assuming for the sake of argument that it was Wylie, the address book cannot be cross-examined. The most that could be inferred from the presence of appellant's name is that Wylie had knowledge of appellant  not that appellant knew Wylie or had any knowledge that his name was in the address book.
Because appellant denied any prior knowledge of Wylie, the result of admitting the address book was plainly to dissipate any credibility of appellant with the jury, thus effectively eliminating any reasonable doubt. We believe the error to be harmful because of the right of confrontation of witnesses conferred by the Sixth Amendment. This is a close circumstantial case, and the admission of the book into evidence ties appellant to the contraband. Were the proof of guilt overwhelming, the book's admission would be harmless.

II

THE SCOPE OF CROSS-EXAMINING APPELLANT'S CHARACTER WITNESS
In addition to his own testimony, appellant offered character witnesses who testified that his reputation for truth and veracity was good.
One of those witnesses, a Miami Beach police sergeant, was asked on cross-examination if he knew appellant had been arrested for possession of marijuana with intent to distribute it in Florida in 1973. Objection by appellant was sustained. The jury was excused whereupon the prosecutor represented to the court he had reasonable grounds to believe appellant committed the act which led to the 1973 arrest. When the jury returned, it was instructed to disregard the question.
Appellant contends the question was so invidious in itself that the curative instruction was insufficient to eliminate the prejudicial effect.
The point raised by appellant actually includes two issues; namely, the evaluation of the question asked and the procedure followed by the prosecutor in asking it. As stated in United States v. Bynum, 566 F.2d 914, 919 (5th Cir.1978):
"Once a witness has testified concerning a defendant's good character, it is permissible during cross-examination to attempt to undermine his credibility by asking him whether he has heard of prior misconduct of the defendant which is inconsistent with the witness' direct testimony.... Courts have imposed two important limitations upon judicial discretion *940 in admitting inquiries concerning such prior misconduct: first, a requirement that the prosecution have some good-faith factual basis for the incidents inquired about (Citations omitted) and second, a requirement that the incidents inquired about are relevant to the character traits involved at the trial."
The character traits involved in the present case are truth and veracity  nothing more.
Accordingly, it was improper to inquire here on cross-examination if the character witness had heard that appellant had been arrested in 1973 for a crime similar to the present charge. Such question had absolutely no bearing on appellant's reputation for truth and veracity.
In Baxter v. State, 294 So.2d 392 (Fla. 4th DCA 1974), we specifically differentiated between attack on a defendant's general character and his reputation for truth and veracity.
"Evidence of the bad character of an accused is admissible only after he has introduced evidence of his good character. Machara v. State, Fla.App. 1973, 272 So.2d 870; 1 Wigmore on Evidence, § 57 (3rd Ed. 1940); 13 Fla.Jur., Evidence, § 154. However, when a witness, whether a party or not, and whether the case be civil or criminal, takes the witness stand he ipso facto places his credibility in issue. Ivey v. State, 132 Fla. 36, 180 So. 368 (1938).
* * * * * *
Adverting to the case at bar, appellant became a witness in his own behalf and by so doing placed in issue his general reputation for truth and veracity. The state was then at liberty to attack his credibility by showing, not that his general character was bad, but that his reputation for truth and veracity was bad."
More than thirty years ago the Supreme Court in Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed.2d 168 (1948), made it plain that the prior arrest in question must be relevant to the trait under inquiry.
"It is not only by comparison with the crime on trial but by comparison with the reputation asserted that a court may judge whether the prior arrest should be made subject of inquiry."
The Court, in Michelson, permitted the question about a prior arrest on cross-examination because the prior charge unquestionably related to the trait about which the witness had testified on direct.
More recently, in Florida it was held that inquiry into a prior arrest for driving while intoxicated was completely irrelevant to the issue of reputation for truth and veracity. Watkins v. State, 342 So.2d 1057 (Fla. 1st DCA 1977).
See, also, McCormick on Evidence (2nd Ed. 1972), Sec. 191, p. 456.
As for appellant's argument that no attack on reputation can be made by inquiry into a prior arrest in the absence of conviction, the Court in Michelson, supra, held to the contrary.
"Arrest without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness. It happens to the innocent as well as the guilty. Only a conviction, therefore, may be inquired about to undermine the trustworthiness of a witness.
Arrest without more may nevertheless impair or cloud one's reputation. False arrest may do that. Even to be acquitted may damage one's good name if the community receives the verdict with a wink and chooses to remember defendant as one who ought to have been convicted. A conviction, on the other hand, may be accepted as a misfortune or an injustice, and even enhance the standing on one who mends his ways and lives it down. Reputation is the net balance of so many debits and credits that the law does not attach the finality to a conviction when the issue is reputation, that is given to it when the issue is the credibility of the convict.
The inquiry as to an arrest is permissible also because the prosecution has a right to test the qualifications of the witness to bespeak the community opinion. If one never heard the speculations and rumors in which even one's friends indulge upon his arrest, the jury may doubt whether he is capable of giving any very *941 reliable conclusions as to his reputation." 335 U.S. at 482-83, 69 S.Ct. 222.
Finally, appellant argues that there was error because of the delay by the assistant state attorney in making a professional statement that he had reasonable ground to believe that the misconduct attributed to appellant which occasioned his prior arrest was actually committed by appellant. We have previously approved the suggested procedure for the making of such statement prior to asking the question  not after. Greenfield v. State, 336 So.2d 1205 (Fla. 4th DCA 1976).
In summary, appellant is correct in his argument that the subject question was improper as was the procedure followed by the assistant state attorney. Because we have decided that the error discussed in Point I was harmful and requires a new trial of appellant, we need not decide if Point II constitutes reversible error. Our discussion on this latter point is presented for the purpose of avoiding any problem in a new trial.
The judgment and sentence under review are reversed and the cause is remanded for new trial.
REVERSED AND REMANDED.
DOWNEY, C.J., and ANSTEAD, J., concur.