734 So.2d 463 (1999)
Reginald E. BULLIS, Appellant,
v.
STATE of Florida, Appellee.
No. 98-2616.
District Court of Appeal of Florida, Fifth District.
May 7, 1999.
James B. Gibson, Public Defender, and Rebecca M. Becker, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Anthony J. Golden, Assistant Attorney General, Daytona Beach, for Appellee.
GRIFFIN, C.J.
Reginald E. Bullis ["Bullis"] appeals his conviction for possession of a firearm by a convicted felon. He contends that the court should have granted his motion for judgment of acquittal. Alternatively, he seeks a new trial on the ground that one of his jurors was sleeping during part of the trial. We affirm.
In the early morning hours of June 27, 1998, police officers were called to Bullis' residence because of reports that someone was armed and there had been a shooting incident. Bullis, who had been drinking, refused to come out after officers arrived, and engaged in a night-long standoff with police. Ultimately, thirty-five to forty officers were dispatched to the scene, including the swat team. Bullis surrendered after the swat team tear-gassed the residence. Three firearms were found inside of a motorhome parked outside the residence, and a rifle was found underneath the motorhome. Based on the presence of these weapons, Bullis was charged by information with one count of possession of a firearm by a convicted felon.
At trial, defense counsel stipulated to all issues other than Bullis' possession of the firearms involved. The state's possession evidence was presented through the testimony of officers who were present at Bullis' residence during the standoff. Only one officer, Deputy Steve Fortier, was able to place Bullis inside the motorhome in which the weapons were found.
*464 Deputy Fortier testified that around midnight on January 27, 1998, he responded to a citizens' complaint made by Joanne Bullis and her son. Deputy Fortier then requested backup to go to Bullis' residence. When they arrived, they set up a perimeter around the property, which was between one-half acre and one acre in size. At sunrise, Deputy Fortier said:
I observed Mr. Bullis exit the motor home and walk over to the main residence, which is like a mobile home with awith a built-on addition.
He admitted on cross-examination that he never saw Bullis with a firearm and could not see him moving around inside the RV.
Additional evidence presented by the state during its case in chief included pictures of a number of guns which were found scattered around inside the motorhome, including a pump shotgun which was sitting underneath the bed, a .410 shotgun sitting on top of the bed, and a.357 magnum. The two shotguns were aimed at the door. There was also ammunition sitting in the passenger seat of the motorhome. A long rifle was also found underneath the right rear of the motorhome. Pictures also showed a hatch or open doorway of the motorhome. The two shotguns, a rifle and a handgun were taken into custody. Three of the weapons were recovered from inside the motorhome and one from underneath the motorhome.
At the close of the state's case, defense counsel moved for a judgment of acquittal on the possession charge, on the ground that the evidence was insufficient to show that Bullis had possession of the guns found in the motorhome. The court denied the motion, finding that the evidence that Bullis possessed the weapons was sufficient to create an issue for the jury. We agree and decline to reverse on this point.
Immediately after defense counsel concluded his closing argument, the prosecutor asked to approach the bench. The prosecutor then asked the court to excuse juror number three on the basis that she had been sleeping. Although defense counsel joined in the motion, the court refused to excuse the juror.
Bullis is correct that trial courts routinely replace sleeping jurors to avoid the problem which has occurred in this case. See, e.g., Blair v. State, 667 So.2d 834 (Fla. 4th DCA 1996), decision approved, 698 So.2d 1210 (Fla.1997); Orosz v. State, 389 So.2d 1199 (Fla. 1st DCA 1980). However, the decision of whether to replace or to retain a sleeping juror rests in the sound discretion of the trial court. See, e.g., Ivey v. State, 132 Fla. 36, 180 So. 368 (1938); Orosz, supra. We have found no Florida case in which an appellate court has reversed the decision made by the court regarding a sleeping juror. Appellate courts have affirmed on appeal both the decision to replace a sleeping juror, e.g., Orosz, supra, as well as the decision to retain a sleeping juror, e.g., Ivey, supra. Neither Bullis nor the state attorney indicated how long they thought the juror had been sleeping. Thus, it is impossible to tell whether the juror's sleeping was prejudicial to the defense. It should also be noted that there is no indication that the juror slept through any testimony, only closing arguments. Bullis has failed to demonstrate an abuse of discretion.
AFFIRMED.
HARRIS and PETERSON, JJ., concur.