547 So.2d 1201 (1989)
Richard Wallace RHODES, Appellant,
v.
STATE of Florida, Appellee.
No. 67842.
Supreme Court of Florida.
July 6, 1989.
Rehearing Denied September 20, 1989.
*1202 James Marion Moorman, Public Defender, and Robert F. Moeller, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen. and Candance M. Sunderland and Joseph R. Bryant, Asst. Attys. Gen., Tampa, for appellee.
PER CURIAM.
Richard Wallace Rhodes appeals his conviction for first-degree murder and sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm appellant's conviction but remand to the trial court for a new sentencing hearing.
On March 24, 1984, the decomposing body of an approximately forty-year-old female, missing her lower right leg,[1] was found in debris being used to construct a berm in St. Petersburg. The debris in the immediate area where the body was found came from the Sunset Hotel in Clearwater, which had been demolished on March 15, 1984. The body was identified by fingerprints as that of Karen Nieradka. The Pinellas County medical examiner determined manual strangulation to be the cause of death because the hyoid bone in the victim's throat was broken. No evidence was found of sexual intercourse, sexual molestation, or rape.
On March 2, 1984, Rhodes was stopped by the Florida Highway Patrol in Hernando County while driving a white 1983 Dodge registered to the victim. Rhodes was arrested for driving without a valid driver's license and taken to the Citrus County Jail. On March 26, 1984, Rhodes was interviewed in the Citrus County Jail by detectives from the Pinellas County Sheriff's Department. During this and subsequent interviews, Rhodes gave different and sometimes conflicting statements to his interviewers, *1203 always denying that he raped or killed Karen Nieradka.
On April 27, 1984, during the ride from the Citrus County Jail to Pinellas County following his arrest for first-degree murder, Rhodes offered to tell Detective Porter how the victim had died if he could be guaranteed he would spend the rest of his life in a mental health facility. Rhodes then claimed the victim died accidentally when she fell three stories while in the Sunset Hotel.
At trial three of Rhodes' fellow inmates at the Pinellas County Jail were called as witnesses for the state. Each inmate testified that Rhodes admitted killing Karen Nieradka.
The jury found Rhodes guilty of first-degree murder. Upon conclusion of the penalty phase of the trial, the jury recommended that the trial court impose a sentence of death.
A sentencing hearing was held on September 12, 1985. The trial judge sentenced Rhodes to death and orally stated her findings of aggravation and mitigation. Written findings in support of the imposition of the death penalty were not filed until September 24, 1986.

Guilt Phase
Rhodes raises eleven issues concerning the guilt phase of the trial, of which only two merit discussion: the improper remarks made by the prosecutor during his final argument to the jury and the instruction on flight given to the jury by the trial court.[2]
Rhodes argues that several remarks made by the prosecution during closing argument of the guilt phase were prejudicial, and thus his motions for mistrial should have been granted. We held in State v. Murray, 443 So.2d 955, 956 (Fla. 1984), that "prosecutorial error alone does not warrant automatic reversal of a conviction unless the errors involved are so basic to a fair trial that they can never be treated as harmless." While some of the comments made by the prosecutor were objectionable, we do not find the remarks compromised the fairness of the trial proceedings. Under the totality of the circumstances of this case, the remarks were harmless, and no mistrial was warranted.
Rhodes next argues that the trial court should not have given an instruction on flight because there was no evidence to support the instruction.[3] We agree. The state failed to establish that Rhodes was fleeing to avoid prosecution for the murder of the victim at the time he was stopped by the highway patrol for speeding. "Flight alone [will] not support an instruction that such flight is evidence of consciousness of guilt, as it would be no more consistent with guilt than with innocence." Whitfield v. State, 452 So.2d 548, 550 (Fla. 1984) (citing Proffitt v. State, 315 So.2d 461 (Fla. 1975), aff'd, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976)). From the evidence presented at trial, the jury could not reasonably infer that Rhodes was fleeing to avoid prosecution. Although we find the instruction improper, the error here is harmless.

*1204 Penalty Phase
In his first point concerning the penalty phase of his trial, Rhodes claims the trial court improperly admitted the testimony of Captain Jerry Rolette of the Mineral County, Nevada sheriff's office regarding his investigation of the battery with a deadly weapon and attempted robbery offenses for which Rhodes was convicted in Nevada. Captain Rolette's testimony followed the introduction into evidence of a certified copy of Rhodes' Nevada judgment and sentence showing his conviction for these offenses. As part of his testimony Captain Rolette identified a tape recording of an interview he conducted with the sixty-year-old victim. The tape recording was subsequently admitted into evidence and played for the jury.[4] Rhodes argues that Captain Rolette's testimony and the tape recording were highly prejudicial to his defense. Moreover, Rhodes contends that by allowing the jury to listen to the tape recording of Rolette's interview with the Nevada victim, the trial court denied Rhodes' his sixth amendment right to confront and cross-examine witnesses.
This Court has held that it is appropriate in the penalty phase of a capital trial to introduce testimony concerning the details of any prior felony conviction involving the use or threat of violence to the person rather than the bare admission of the conviction. See Tompkins v. State, 502 So.2d 415 (Fla. 1986), cert. denied, 483 U.S. 1033, 107 S.Ct. 3277, 97 L.Ed.2d 781 (1987); Stano v. State, 473 So.2d 1282 (Fla. 1985), cert. denied, 474 U.S. 1093, 106 S.Ct. 869, 88 L.Ed.2d 907 (1986). Testimony concerning the events which resulted in the conviction assists the jury in evaluating the character of the defendant and the circumstances of the crime so that the jury can make an informed recommendation as to the appropriate sentence. It was not error for the trial court to admit Captain Rolette's testimony.
However, we do find error in the introduction of the tape recorded statement of the Nevada victim. While hearsay evidence may be admissible in penalty phase proceedings, such evidence is admissible only if the defendant is accorded a fair opportunity to rebut any hearsay statements. § 921.141(1), Fla. Stat. (1985). The statements made by the Nevada victim came from a tape recording, not from a witness present in the courtroom. In Engle v. State, 438 So.2d 803, 814 (Fla. 1983), cert. denied, 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 753 (1984), we stated:
The sixth amendment right of an accused to confront the witnesses against him is a fundamental right which is made obligatory on the states by the due process of law clause of the fourteenth amendment to the United States Constitution. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The primary interest secured by, and the major reason underlying the confrontation clause, is the right of cross-examination. Pointer v. Texas. This right of confrontation protected by cross-examination is a right that has been applied to the sentencing process. Specht v. Patterson, [386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967)].
Obviously, Rhodes did not have the opportunity to confront and cross-examine this witness. By allowing the jury to hear the taped statement of the Nevada victim describing how the defendant tried to cut her throat with a knife and the emotional trauma suffered because of it, the trial court effectively denied Rhodes this fundamental right of confronting and cross-examining a witness against him. Under these circumstances if Rhodes wished to deny or explain this testimony, he was left with no choice but to take the witness stand himself.[5]
Although this Court has approved the introduction of testimony concerning the details of prior felony convictions involving violence during the penalty phase of a capital *1205 trial, Tompkins; Stano, the line must be drawn when that testimony is not relevant, gives rise to a violation of a defendant's confrontation rights, or the prejudicial value outweighs the probative value. Not only did the introduction of the tape recording deny Rhodes his right of cross-examination, but the testimony was irrelevant and highly prejudicial to Rhodes' case. The information presented to the jury did not directly relate to the crime for which Rhodes was on trial, but instead described the physical and emotional trauma and suffering of a victim of a totally collateral crime committed by the appellant.[6] For these reasons, it was error for the trial court to allow the tape recording to be played before the jury.
Rhodes next argues that during the penalty phase, a defense witness was improperly cross-examined by the state. The question Rhodes claims was improper asked whether the witness had any knowledge of an incident in which shanks (small knives) were discovered in Rhodes' shoes upon his return to the Pinellas County jail after an appearance in court. Rhodes had neither been charged with nor convicted of an offense stemming from this incident. In fact, later testimony from the Pinellas County Jail correctional officer who searched Rhodes was that the "shanks" in question were braces for the soles of Rhodes' shoes. He stated the braces were not sharpened and did not look like weapons, nor did it appear they had ever been removed from the shoes. Nonetheless, the state argues that the question was proper as a means of impeaching a defense character witness.
In appropriate circumstances section 90.405(2), Florida Statutes (1987), does authorize a defense character witness to be impeached by referring to specific acts of misconduct of the defendant. However, before cross-examining the witness, counsel is required to demonstrate to the court that a good-faith factual basis exists for asking the question. See Butler v. State, 376 So.2d 937 (Fla. 4th DCA 1979) (citing United States v. Bynum, 566 F.2d 914 (5th Cir.1978), cert. denied, 439 U.S. 840, 99 S.Ct. 129, 130, 58 L.Ed.2d 138 (1978)); C. Ehrhardt, Florida Evidence § 405.1 (2d Ed. 1984). The record discloses that the prosecutor simply informed the court that he wished to ask the question about the incident but provided nothing to substantiate that knives were actually found in Rhodes' shoes. Because the state failed to provide a goodfaith basis for asking the question, the trial court should not have allowed the question to be asked. The question was not based in fact and only served to mislead the jury. Moreover, the circumstances here do not implicate section 90.405.(2) since the attempted cross-examination was not proper impeachment of anything presented on direct.
As his third point, Rhodes objects to five remarks made by the prosecutor in his closing argument. In the first remark the prosecutor asked the jurors to try to place themselves in the hotel during the victim's murder. This remark is similar to the Golden Rule argument we condemned in Bertolotti v. State, 476 So.2d 130 (Fla. 1985), in which the prosecutor urged the jury to place themselves in the position of the victim and imagine the victim's "final pain, terror and defenselessness."
Second, the prosecutor argued that the fact that the victim's body was transported by dump truck from the hotel where she was killed to the dump where she was found supported the aggravating factor that the murder was heinous, atrocious, and cruel. We have stated that a defendant's actions after the death of the victim cannot be used to support this aggravating circumstance. Jackson v. State, 451 So.2d 458 (Fla. 1984); Herzog v. State, 439 So.2d 1372 *1206 (Fla. 1983). This statement was improper because it misled the jury.
Third, Rhodes claims the prosecutor made several remarks that suggested Rhodes might be paroled before he had served his twenty-five-year minimum mandatory term if the jury recommended life imprisonment rather than the death penalty. This statement should not have been allowed because it is a misstatement of the law.
Fourth, the prosecutor insisted that Rhodes acted like a vampire when he committed both the Florida and Nevada crimes. The record does not support this contention, and the comments were not relevant to aggravation.
Finally, the prosecutor concluded his argument by urging the jury to show Rhodes the same mercy shown to the victim on the day of her death. This argument was an unnecessary appeal to the sympathies of the jurors, calculated to influence their sentence recommendation.
After each comment was made, Rhodes' counsel objected and moved for a mistrial. The trial judge overruled the objections and denied each motion. As we stated earlier, prosecutorial error alone does not automatically warrant a mistrial. State v. Murray, 443 So.2d 955 (Fla. 1984). While none of these comments standing alone may have been so egregious as to warrant a mistrial, this is not a case of merely a single improper remark. The prosecutor's closing argument was riddled with improper comments, and not once did the trial judge sustain an objection and give a curative instruction to the jury to disregard the statements. We believe the cumulative effect of the improper remarks in the absence of curative instructions was to prejudice Rhodes in the eyes of the jury and could have played a role in the jury's decision to recommend the death penalty.
We now turn to Rhodes' argument that it was error for the trial judge to respond to a question from the jury outside the presence of the court and without notifying Rhodes, his counsel, or counsel for the state. In Williams v. State, 488 So.2d 62 (Fla. 1986), we held that when a communication does not fall under the express notice requirements of Florida Rule of Criminal Procedure 3.410,[7] then the communication should be analyzed using harmless error principles. Here the jurors did not request additional instructions or to have testimony read to them. Rather, the jury asked whether it would be polled following the penalty phase as it had been following the conclusion of the guilt phase of the trial. The bailiff, on order of the court, informed the jurors that polling was a possibility. Rhodes argues that an individual juror's decision whether to recommend the death penalty or a life sentence may have been affected by his or her concern that each juror's sentencing recommendation would be announced in the presence of the court. The jury recommended death by a vote of seven to five.
Applying a harmless error analysis, we do not believe the state has shown beyond a reasonable doubt that the jury verdict was not affected by the communication between the trial judge and the jury. The question asked demonstrates the jurors were concerned about being polled. Their only experience with the polling process occurred after the guilt phase when each juror was asked whether the guilty verdict was his or her own. The close jury vote suggests a reasonable possibility exists that some of the jurors may have voted differently and affected the sentence recommendation if they thought they would not be required to reveal their vote in open court. We therefore find the communication in this case was not harmless error.
Rhodes next challenges the sufficiency of the trial court's findings of fact in support of the aggravating and mitigating circumstances set forth in section 921.141, Florida Statutes (1987). During the sentencing phase held September 12, 1985, the *1207 trial court orally pronounced its findings of fact in support of the death penalty. The written findings of fact signed are identical to those announced at trial and are set forth as follows:
That you [Richard Rhodes] committed the crime of which the jury found you guilty while you were under sentence of imprisonment from which you were on parole.
That you had a propensity to commit violent crimes and have a propensity to commit violent crimes as evidenced by your prior convictions of felony crimes involving use or threat of violence.[[8]]
That you committed the murder of Karen Nieradka while you were engaged in the commission of a robbery or sexual battery.
That the murder of Karen Nieradka was especially heinous, atrocious and cruel in that the victim was manually strangled and the clumps of her own hair found in her clenched hands indicates the pain and mental anguish that she must have suffered in the process.
That you murdered Karen Jeter Nieradka in cold, calculated and premeditated manner, without any pretense of moral or legal justification.
The only mitigating circumstance the court finds is some evidence of a long-term personality or character disorder. But your own statements showed that you had the capacity to try to cover your tracks and try to outwit and confuse those investigating the crime.
This Court has stressed the importance of issuing specific written findings of fact in support of aggravation and mitigation on a timely basis after oral sentence has been pronounced. Van Royal v. State, 497 So.2d 625 (Fla. 1986). In this case the trial court signed the sentencing order on the day of sentencing, and therefore we do not find the holding of Van Royal applicable. We reiterate, however, that the sentencing order should reflect that the determination as to which aggravating and mitigating circumstances apply under the facts of a particular case is the result of "a reasoned judgment" by the trial court. State v. Dixon, 283 So.2d 1, 10 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). Weighing the aggravating and mitigating circumstances is not a matter of merely listing conclusions. Nor do the written findings of fact merely serve to "memorialize" the trial court's decision. Van Royal, 497 So.2d at 628. Specific findings of fact provide this Court with the opportunity for a meaningful review of a defendant's sentence. Unless the written findings are supported by specific facts and are timely filed, this Court cannot be assured the trial court imposed the death sentence based on a "well-reasoned application" of the aggravating and mitigating factors. Id.
We note that in this case it is difficult to ascertain from the sentencing order the analysis used by the trial court to weigh the aggravating and mitigating factors; it appears the trial court merely stated which aggravating and mitigating factors applied. The findings of fact contain little analysis and very little application of the specific facts of Rhodes' case. Although we find the sentencing order in this case to be sufficient, we urge trial judges to use greater care when preparing their sentencing orders so it is clear to this Court how the trial judge arrived at the decision to impose the death sentence.
Finally, Rhodes contends that the trial court improperly found three aggravating circumstances and did not consider the evidence presented in mitigation.
The trial court found that the murder was committed while engaged in the commission of a robbery or sexual battery. No evidence was presented to show that the reason Rhodes killed the victim was to obtain her property or that he possessed the requisite intent to deprive the victim of her property at the time of the murder. However, there was sufficient evidence of attempted *1208 sexual battery to support this aggravating factor.
The trial court found the murder was especially heinous, atrocious, or cruel because the evidence suggested the victim was manually strangled. We note, however, that in the many conflicting stories told by Rhodes, he repeatedly referred to the victim as "knocked out" or drunk. Other evidence supports Rhodes' statement that the victim may have been semiconscious at the time of her death. She was known to frequent bars and to be a heavy drinker. On the night she disappeared, she was last seen drinking in a bar. In Herzog v. State, 439 So.2d 1372 (Fla. 1983), we declined to apply this aggravating factor in a situation in which the victim, who was strangled, was semiconscious during the attack. Additionally, we find nothing about the commission of this capital felony "to set the crime apart from the norm of capital felonies." State v. Dixon, 283 So.2d at 9. Due to the conflicting stories told by Rhodes we cannot find that the aggravating circumstance of heinous, atrocious, and cruel has been proven beyond a reasonable doubt.
Rhodes also challenges the trial court's finding that the murder was cold, calculated, and premeditated. However, no reasons were articulated by the trial court to support this finding. We find the record does not conclusively support this factor.
Thus, only one of the three aggravating circumstances upon which the trial court relied is valid. On the other hand, there was substantial psychiatric testimony presented in mitigation that Rhodes had led a very disturbed life and had been diagnosed as psychotic in the early 1970s. Because only one aggravating circumstance was found valid and because of the substantial psychiatric testimony concerning Rhodes' previous mental condition, we find that Rhodes is entitled to a new sentencing proceeding.[9]
We affirm the conviction in this case but because of the errors in the penalty phase of the trial, we vacate the sentence and remand to the trial court for a new sentencing proceeding before a jury.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] The lower right leg was found several days later a few yards away from the discovery site of the body.
[2] The remaining nine issues concerning the guilt phase, which we find to be without merit, are: (1) the failure to suppress statements made by Rhodes incident to his arrest; (2) the failure to suppress statements made by Rhodes to a fellow inmate; (3) the trial court's error in permitting a state witness to testify to statements made by Rhodes which were allegedly prejudicial and irrelevant; (4) the trial court's error in admitting into evidence color photographs and a color videotape of the victim; (5) the trial court's error in allowing testimony of an FBI agent that was allegedly outside the agent's area of expertise; (6) the trial court's error in admitting a statement referring to Rhodes' prior incarceration; (7) the trial court's error in excluding on hearsay grounds testimony of a defense witness regarding a statement made by the victim alleged to be admissible under the state of mind exception; (8) the trial court's error in allowing the state to present rebuttal evidence; (9) the trial court's instruction to the alternate jurors to remain in the courtroom in the event they were needed for a penalty phase hearing.
[3] Included in this issue are two other subissues which we find to be without merit: (1) the trial court erred in instructing the jury regarding the time of the victim's death; and (2) the trial court erred in refusing to instruct the jury on second-degree felony murder.
[4] We note that Rhodes moved in limine prior to Captain Rolette's testimony to exclude both the testimony and the taped statement. The trial court denied the motion.
[5] The record reflects that the Nevada victim was unable to make the trip to Florida to testify due to her age and health.
[6] Furthermore, we see no reason why introduction of the tape recording was necessary to support aggravation in this case. The state had introduced a certified copy of the Nevada judgment and sentence indicating that Rhodes had pled guilty to and was convicted of an offense involving the use or threat of violence. There was the testimony from Captain Rolette regarding his investigation of the incident. This evidence was more than sufficient to establish the aggravating circumstance that Rhodes had previously committed a felony involving the use or threat of violence and to establish the circumstances of the crime.
[7] Florida Rule of Criminal Procedure 3.410 provides that if the jury requests additional instructions or to have testimony read to them after retiring to consider the verdict, the requested instructions or testimony is to be given in open court and only following notice to the prosecuting attorney and counsel for the defendant.
[8] A propensity to commit violent crimes is a factor to be considered in aggravation only when prior felony convictions are proved. We assume the trial court based aggravation on Rhodes' prior felony convictions since reference is made to those crimes.
[9] Because we have determined that Rhodes is entitled to a new sentencing proceeding, we do not reach the issue of whether the trial court properly considered the evidence presented in mitigation.