568 So.2d 1255 (1990)
Rickey Bernard ROBERTS, Appellant,
v.
STATE of Florida, Appellee.
Rickey Bernard ROBERTS, Petitioner,
v.
Richard L. DUGGER, Respondent.
Nos. 74920, 74788.
Supreme Court of Florida.
September 6, 1990.
Rehearing Denied November 27, 1990.
*1256 Larry Helm Spalding, Capital Collateral Representative, Martin J. McClain, Asst. CCR., and Linda Feldman and Tom Dunn, Staff Attys., Office of the Capital Collateral Representative, Tallahassee, for appellant/petitioner.
Robert A. Butterworth, Atty. Gen., and Ralph Barreira, Asst. Atty. Gen., Miami, for appellee/respondent.
PER CURIAM.
Rickey Bernard Roberts, a prisoner under sentence of death, appeals the trial court's denial of his motion to vacate conviction and sentence made pursuant to Florida Rule of Criminal Procedure 3.850, and petitions this Court for a writ of habeas corpus. We have jurisdiction, pursuant to article V, sections 3(b)(1) and (9), Florida Constitution, and deny all relief.
Roberts was convicted of first-degree murder, armed sexual battery and armed kidnapping. In accordance with the jury's recommendation, the trial court imposed the death penalty, finding four aggravating circumstances and no mitigating circumstances. Both the convictions and sentences were affirmed by this Court on direct appeal. Roberts v. State, 510 So.2d 885 (Fla. 1987), cert. denied, 485 U.S. 943, 108 S.Ct. 1123, 99 L.Ed.2d 284 (1988). A death warrant was signed, with execution scheduled for October 31, 1989. Roberts petitioned this Court for a writ of habeas corpus and requested a stay of execution. Roberts also filed a rule 3.850 motion to vacate conviction and sentence which was summarily denied by the trial court on October 25, 1989. We granted a stay of execution pending our consideration of Roberts' appeal of that denial and review of his petition.

RULE 3.850 MOTION
Where, as here, the trial court denies a motion for postconviction relief without conducting an evidentiary hearing, the motion and the record must conclusively demonstrate that the defendant is entitled to no relief. Kennedy v. State, 547 So.2d 912, 913 (Fla. 1989). Applying this standard, we affirm the denial of Roberts' rule 3.850 motion.
Roberts raised the following claims in his rule 3.850 motion: I) application of Florida Rule of Criminal Procedure 3.851 violates his due process and equal protection rights by shortening the time allotted under rule 3.850 in which to file a motion for postconviction relief; II) the prosecutor peremptorily excused black prospective jurors in violation of Batson v. Kentucky, 476 U.S. 79, *1257 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and State v. Slappy, 522 So.2d 18 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988); III) the jury's sense of responsibility for sentencing was diminished contrary to Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); IV) his rights to present a defense and to confront witnesses were denied when he was prohibited from cross-examining Michelle Rimondi about alleged prostitution, contrary to Olden v. Kentucky, 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1989); V) his rights to present a defense and to testify were violated when Florida's rape-shield law was applied to limit his testimony, contrary to Olden and Rock v. Arkansas, 107 S.Ct. 2704, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987); VI) the state's repeated reference to him by an alias deprived him of his right to be presumed innocent; VII) his confrontation rights were violated when he was denied access to the rape-treatment counselor who treated Rimondi, contrary to Pennsylvania v. Ritchie, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987); VIII) his rights were violated when cross-examination into crimes committed by state's witnesses was limited; IX) trial counsel was ineffective during the guilt phase of the trial; X) he was denied effective assistance of counsel when his first attorney withdrew because of purported conflict of interest; XI) he was deprived of an adequate mental health evaluation at the penalty phase because trial counsel failed to provide experts with adequate background information; XII) counsel was ineffective during the penalty phase for failing to investigate and present mitigating evidence; XIII) the state's closing arguments in the guilt and penalty phases denied him of fair and reliable capital sentencing; XIV) the state withheld exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); XV) his sentencing jury was improperly instructed on the "especially heinous, atrocious, or cruel" aggravating circumstance, in violation of Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), and Rhodes v. State, 547 So.2d 1201 (Fla. 1989); XVI) the penalty phase instructions shifted the burden to the defendant to prove that death was inappropriate and the judge employed this standard, contrary to Adamson v. Ricketts, 865 F.2d 1011 (9th Cir.1988); XVII) the state improperly told the jury that sympathy towards the defendant was an improper consideration, contrary to Penry v. Lynaugh, ___ U.S. ___, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), and Parks v. Brown, 860 F.2d 1545 (10th Cir.1988), rev'd sub nom., Saffle v. Parks, ___ U.S. ___, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990); XVIII) his death sentence is predicated upon the finding of an automatic aggravating circumstance, in violation of Lowenfield v. Phelps, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988); XIX) the aggravating factor of "under sentence of imprisonment" was given undue weight by the jury and judge, contrary to Songer v. State, 544 So.2d 1010 (Fla. 1989); XX) the jury was allowed to consider victim-impact evidence in violation of Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), and South Carolina v. Gathers, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989); XXI) his sentence of death was based upon an unconstitutionally obtained prior conviction; XXII) the trial court improperly refused to find mitigating circumstances which were clearly set out in the record; XXIII) nonstatutory aggravating factors were improperly introduced during the sentencing phase; and XXIV) the trial court improperly limited the testimony of the defense's mental health expert.
Roberts' first claim that application of Florida Rule of Criminal Procedure 3.851 violates his due process and equal protection rights by shortening the time allotted under rule 3.850 in which to file a motion for post-conviction relief has been rejected by this Court. Cave v. State, 529 So.2d 293 (Fla. 1988). Of the remaining twenty-three claims raised, eighteen are procedurally barred. Claim V and the portion of claim XXII dealing with statutory mitigating factors are procedurally barred because they were raised and rejected on direct appeal. Roberts, 510 So.2d at 892, 894. Claims II, III, IV, VI, VII, VIII, X, XIII, *1258 XV, XVI, XVII, XVIII, XIX, XX, XXI, XXIII, XXIV, and the remainder of claim XXII are barred because they could have been raised on direct appeal. None of the decisions relied upon in connection with these claims is such a change in the law as to preclude a procedural bar under Witt v. State, 387 So.2d 922 (Fla.), cert. denied, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980). Of those claims, only claims II, IV, V, XV, and XVII merit further discussion.
As his second claim Roberts argues that the trial court employed an improper standard in ruling on defense counsel's Neil[1] objection to the state's excusal of two black prospective jurors. This Neil issue was not raised on appeal and Batson and Slappy are not fundamental changes in the law which would allow collateral consideration of the issue. See State v. Safford, 484 So.2d 1244 (Fla. 1986) (Neil not to be retroactively applied to cases where appellate process was completed when Neil became effective). In Slappy, we reaffirmed Neil, noting that the guarantees adopted in Neil exceed those adopted in Batson. Slappy, 522 So.2d at 21.
In connection with claims IV and V, we rejected Robert's challenge to application of Florida's rape-shield law on direct appeal, specifically recognizing that if application of this law "interfered with Robert's confrontation rights or otherwise operated to preclude Roberts from presenting a full and fair defense, the statute would have to give way to these constitutional rights. See Chambers v. Mississippi, 410 U.S. 284 [93 S.Ct. 1038, 35 L.Ed.2d 297] (1973)." Roberts, 510 So.2d at 892. While claim IV that Roberts' direct-examination testimony was improperly restricted was raised employing a slightly different argument, claim V dealing with the restriction of cross-examination of Rimondi was not raised. See Roberts, 510 So.2d at 892. Roberts urges that these claims should now be considered in light of the United States Supreme Court's recent decision in Olden.
Olden, a black man, was charged with kidnapping, rape, and forcible sodomy of a white woman. During Olden's trial, he was precluded, under Kentucky's rape-shield law, from cross-examining the victim regarding her cohabitation with her black boyfriend. Because this evidence was relevant to Olden's claim that he and the victim had engaged in consensual sexual acts and that out of fear of jeopardizing her relationship with her boyfriend, she claimed she had been raped, the United States Supreme Court held that Olden's sixth amendment confrontation rights were violated. Olden is not a fundamental change in the law requiring retroactive application under this Court's decision in Witt. Olden is simply an application of the long-established and well-recognized principle of law which we applied in rejecting Roberts' original claim on appeal. Likewise, Rock v. Arkansas, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987), which Roberts relies on in claim V, is not a fundamental change in the law. In Rock, the United Supreme Court expressly relied on Chambers to hold that a state "may not apply a rule of evidence that permits a witness to take the stand, but arbitrarily excludes material portions of his testimony." Rock, 107 S.Ct. at 2711. Neither Olden nor Rock precludes a procedural bar of claims IV and V.
On direct appeal, this Court rejected Roberts' challenge to application of the aggravating factor of heinous, atrocious, or cruel. 510 So.2d at 894. Summary denial of claim XV that his sentencing jury was improperly instructed on this factor was proper because any other basis for a challenge to that factor which was not raised on direct appeal is procedurally barred. Further, in Smalley v. State, 546 So.2d 720 (Fla. 1989), we recently held Maynard is not applicable under Florida's death sentencing procedure. We have also held our decision in Rhodes is not a fundamental change in the law which will be applied retroactively under Witt. Porter v. Dugger, 559 So.2d 201 (Fla. 1990).
*1259 In claim XVII, Roberts argues that the jury was improperly led to believe that sympathy towards the defendant was an improper consideration, contrary to the United States Supreme Court's recent decision in Penry v. Lynaugh, ___ U.S. ___, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). This claim was not raised on direct appeal and Penry, which we have held to be inapplicable to Florida's death penalty scheme, provides no relief from this procedural bar. See Porter v. Dugger, 559 So.2d 201, 204; see also Saffle v. Parks, ___ U.S. ___, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990) (Court held that defendant was not entitled to federal habeas relief based on claim that instruction during penalty phase telling the jury to avoid any influence of sympathy violated the eighth amendment).
Claim XX that his death sentence was based on impermissible victim-impact evidence under Booth and Gathers is also procedurally barred. A Booth claim must be preserved by a timely objection before the claim will be considered in a collateral proceeding. Jackson v. Dugger, 547 So.2d 1197 (Fla. 1989); Eutzy v. State, 541 So.2d 1143, 1145 (Fla. 1989). In order to preserve an issue for appellate review, the specific legal ground upon which a claim is based must be presented to the trial court. Bertolotti v. Dugger, 514 So.2d 1095 (Fla. 1987); Tillman v. State, 471 So.2d 32 (Fla. 1985). Of the objections which were made to the numerous instances of alleged victim-impact evidence, none of those objections were based on the prejudicial nature of the evidence. Roberts raised a hearsay objection to testimony of Chief of Police Dyne of Salisbury, Maryland, concerning what he now characterizes as the impact of his prior offense on the victim of that crime. In fact, in his petition for writ of habeas corpus Roberts claims appellate counsel was ineffective for not raising the hearsay challenge on appeal. Several objections were also made in connection with testimony concerning Rimondi's mental state after the murder and rape. Even if guilt phase testimony that Rimondi was upset, delirious, and confused could be considered impermissible victim-impact evidence, the objections to the testimony were 1) that the questioning was repetitious, 2) that the state's cross-examination was outside the scope of direct examination, and 3) that the witness was improperly testifying about the state of mind of another.
In his brief to this Court, Roberts does not argue the merits of his Booth claim. Rather, he merely acknowledges that no objections were made to the challenged evidence and argues that the requirement that a Booth claim be preserved by a timely objection before such a claim will be considered in a collateral proceeding "does not pass constitutional muster." We do not agree and therefore affirm the trial court's summary denial of this claim.
To be entitled to an evidentiary hearing in connection with a claim of ineffective assistance of trial counsel, the defendant must allege specific facts which are not conclusively rebutted by the record and which demonstrate a deficiency in performance that prejudiced the defendant. Kennedy, 547 So.2d at 913. In claim IX of his rule 3.850 motion, Roberts alleges numerous instances of ineffective assistance, only three of which are specifically raised before this Court. These claims include counsel's alleged failure 1) to adequately impeach Rimondi, 2) to cross-examine state witnesses about exposure to criminal charges, and 3) to present inconsistent statements of Rhonda Haines to Roberts' former counsel. The first claim is based on material discovered during examination of the prosecutor's files in this case. In his supplemental motion to vacate Roberts acknowledges that "[t]his material apparently was not turned over to trial counsel, and thus it is properly pled as a discovery violation in Claim XIV." Counsel cannot be considered deficient in performance for failing to present evidence which allegedly has been improperly withheld by the state. The second and third claims are devoid of adequate factual allegations and therefore are insufficient on their face. As we noted in Kennedy, mere conclusory allegations that trial counsel was ineffective do not warrant an evidentiary hearing. Roberts also has failed to show how he was prejudiced by these alleged omissions. Roberts' *1260 final argument under claim IX that the trial court's rulings limiting his testimony and limiting cross-examination of state witnesses rendered counsel ineffective is simply a reassertion of claims which we have found procedurally barred because they either were raised and rejected or could have been raised on direct appeal. Other alleged instances of ineffectiveness which Roberts attempts to raise by merely referring to arguments presented in his motion for postconviction relief are deemed waived. Duest v. Dugger, 555 So.2d 849, 852 (Fla. 1990).
In claims XI and XII, Roberts maintains that he received an inadequate mental health evaluation because counsel failed to provide mental health experts with adequate background information and that counsel was ineffective for failing to investigate and present mitigating evidence. The trial court denied relief, finding that based on the record Roberts had not been prejudiced by the alleged omissions. The court reasoned:
Seems to me that the doctors involved in this case and of the testimony before me, that these doctors did a very good job in examining this defendant and contacting those people of the family they thought were important and they testified here at length before this court and before the jury as to his background, as to his mental condition. The jury heard it all. Jury heard every bit of it.
The record supports the trial court's conclusion that Roberts was not prejudiced by the alleged deficient performance and therefore was conclusively entitled to no relief in connection with these claims.
Similarly, Roberts is not entitled to a hearing in connection with claim XIV that certain exculpatory evidence was withheld by the state in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and Florida Rule of Criminal Procedure 3.220 because each of the claims is legally insufficient. In his supplemental rule 3.850 motion Roberts alleges that the state attorney's files contained extensive exculpatory and impeachment evidence that was not revealed to the defense. Before this Court, Roberts maintains that the following were not disclosed: 1) notes in the state attorney's office indicating that the physician who treated Ms. Rimondi for the sexual assault believed she was "too calm"; 2) notes that Rimondi received money and was lodged in a hotel during the trial; 3) notes that shortly after her arrest for grand theft Rimondi contacted the prosecutor in Roberts' case to ask him to intercede in the juvenile case; 4) information concerning Rimondi's history of drug use; 5) information that rebuts the results of the rape-treatment kit tests introduced at trial; 6) statements by witnesses that prior to the offense Roberts had been drinking heavily and had used cocaine and marijuana; 7) notes indicating that state witness Campell has a poor reputation for truth telling, used drugs, and was a liar and a thief; and 8) information that one of the state's witnesses has a reputation for violence. First, Roberts himself knew whether he had been drinking or taking drugs prior to the offense and also would have been aware of those who may have witnessed this. There is no Brady violation where alleged exculpatory evidence is equally accessible to the defense and the prosecution. James v. State, 453 So.2d 786, 790 (Fla.), cert. denied, 469 U.S. 1098, 105 S.Ct. 608, 83 L.Ed.2d 717 (1984). In connection with the other alleged instances of undisclosed exculpatory evidence, there is no reasonable probability that, had this evidence been disclosed, the result of the Roberts' trial would have been different. United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); Duest, 555 So.2d at 851. Accordingly, we affirm the summary denial of Roberts' rule 3.850 motion.

PETITION FOR WRIT OF HABEAS CORPUS
In his petition for writ of habeas corpus, Roberts reasserts many of the claims rejected as procedurally barred above and recasts a number of those claims in terms of ineffective assistance of appellate counsel. As his first and second claims, Roberts reasserts claims IV and V *1261 of his rule 3.850 motion challenging application of Florida's Rape Shield Law to preclude testimony concerning Rimondi's activities as a prostitute. Habeas corpus is not a vehicle for additional appeals of issues that could have been, should have been, or were raised on appeal or in other postconviction motions, or of matters that were not objected to at trial. Mills v. Dugger, 559 So.2d 578 (Fla. 1990); Parker v. Dugger, 550 So.2d 459 (Fla. 1989); Suarez v. Dugger, 527 So.2d 190 (Fla. 1988).
Roberts also relies on Olden for his claim that counsel was ineffective for failing to challenge the trial court's refusal to allow the defense to question state witnesses concerning arrests and pending prosecutions. Roberts maintains that this examination would have established the witnesses' motivation for testifying for the state. This claim was not preserved for appellate review because the specific legal argument now presented was never presented to the trial court. Bertolotti v. Dugger, 514 So.2d 1095 (Fla. 1987). Trial counsel never argued that evidence of the arrests and pending charges was admissible to establish bias or motive for testifying. Trial counsel merely argued that he should be allowed to impeach the witnesses by cross-examining them concerning prior convictions. Appellate counsel's failure to raise a claim which was not preserved for appellate review and which does not present a fundamental error does not amount to a serious deficiency in performance. Id.
Roberts also maintains that appellate counsel was ineffective for failing to challenge improper closing argument on direct appeal. Because no objection to the comments complained of was made by trial counsel, appellate counsel was not deficient for failing to raise this point on appeal.
Roberts argues that appellate counsel was ineffective for failing to challenge the state's repeated use of an alias in referring to Roberts. Prior to trial a motion precluding the state from referring to Roberts as Less McCullars, an alias which was used by the defendant, was granted. Roberts now maintains that the prosecutor's repeated use of the alias while examining witnesses and during closing argument suggested that Roberts had committed other criminal acts and impermissibly injected evidence of criminal propensity. These references were not objected to at trial. Appellate counsel was not deficient for failing to raise this unpreserved claim.
Roberts' Booth claim, which was found to be procedurally barred above, is not cognizable in a habeas corpus proceeding. Parker, 550 So.2d at 460; Jackson, 547 So.2d at 1199-1200 n. 2.
Counsel was not ineffective for failing to raise the following unpreserved and meritless claims: 1) his death sentence was based on the finding of an automatic aggravating circumstance; 2) the jury was improperly told by the prosecutor and instructed by the court that it should not consider sympathy toward the defendant in making its recommendation; 3) undue weight was given the aggravating factor of "under sentence of imprisonment"; 4) lack of remorse was improperly stressed to the jury; and 5) the jury's sense of responsibility at sentencing was diminished, contrary to Caldwell.
We also reject Roberts' claim that appellate counsel was ineffective for failing to challenge the trial court's refusal to find mitigating factors. In fact, the trial court's failure to find statutory mitigating factors under section 921.141(6)(b), Florida Statutes (1985) (the murder was committed while under the influence of extreme mental and emotional disturbance) and section 921.141(6)(f) (capacity to appreciate the criminality of conduct or to conform conduct to the requirements of law was substantially impaired) was raised and rejected on direct appeal. Roberts, 510 So.2d at 894. There is no reasonable probability that we would have found merit to this claim if appellate counsel had urged that the trial court also erred in failing to find nonstatutory mitigating factors. It is clear that the trial court considered and rejected the expert testimony concerning mental health mitigating factors. Id. at 894.
Counsel was also not ineffective for failing to challenge the trial court's *1262 refusal to allow one of Roberts' mental health experts to testify about a letter from Roberts' former counsel who withdrew prior to trial. Roberts has failed to show how he was prejudiced by this ruling. Even without reference to the letter from former counsel, the expert gave an extensive account of the bases for his opinion. There is no reasonable probability that the outcome of the proceeding would have been different if reference to the letter had been allowed.
We also reject Roberts' claim that counsel was ineffective for failing to challenge the hearsay statements of Chief of Police Dyne of Salisbury, Maryland, concerning Roberts' 1975 conviction of rape and assault with intent to commit murder. During the penalty phase, over objection, Chief of Police Dyne, who initially investigated the prior crime, testified in detail about the former victim's account of the crime. On redirect, Chief of Police Dyne also testified, over objection, that the victim refused to come to Miami to testify because she was upset that Roberts was out of prison and "couldn't face it again." Relying on our recent decision in Rhodes v. State, 547 So.2d 1201 (Fla. 1989), Roberts argues that this testimony was inadmissible because the victim was not available for cross-examination.
In Rhodes, during the penalty phase of the trial, a law enforcement officer from Nevada was allowed to testify regarding his investigation of Rhodes' prior offenses of battery with a deadly weapon and attempted robbery. During his testimony, the Nevada officer identified a tape-recorded interview with the sixty-year-old victim. The tape recording was admitted into evidence and later played to the jury. While we found it was not error to admit the law enforcement officer's testimony, we held it was error to admit the irrelevant and highly prejudicial tape recording of the victim's interview because Rhodes "did not have the opportunity to confront and cross-examine this witness." Id. at 1204.
In this case, Roberts has not established that there was a reasonable probability that the outcome of his appeal would have been different if the claim had been raised. First, because the defense opened the door for testimony concerning the victim's statements as to why she would not come to Miami to testify it was not error to admit this testimony. On cross-examination, defense counsel emphasized the fact that the victim of the Maryland offense was not present in the courtroom by asking, "You didn't attempt to get hold of her to bring her here, did you?" On redirect by the state, Chief Dyne testified that, "I ... asked her if she would come down, travel down with me to participate" but she was not willing to come. Chief Dyne explained that the victim said she "never got over the assault" and "couldn't face it again." In connection with Chief Dyne's testimony concerning the victim's account of the crime, even if it were error to admit this testimony, the same basic facts were related to the jury during the officer's testimony concerning Roberts' confession of the crime. Therefore, any error would have been found harmless.
Roberts maintains that appellate counsel was ineffective for not challenging the trial court's use of a standard different than that espoused by the United States Supreme Court in Batson in ruling on trial counsel's Neil objection to the state's peremptory challenge of two black prospective jurors. Although Batson was decided before Robert's direct appeal became final, counsel cannot be faulted for failing to present a claim based on Batson.
During jury selection, one of the prosecutors informed the court that after discussion among the prosecution team, the prosecution wished to back strike juror number 57. Defense counsel made a Neil objection, arguing that there was nothing objectionable about juror number 57 and that he was being challenged simply because he was black. Defense counsel then requested that the court conduct a Neil inquiry to ensure that the challenge was not racially motivated. The court then noted that juror number 57 was the first black struck by the state. Although the court declined to rule on the Neil objection finding that it was "untimely," the state explained that *1263 juror number 57 had originally been acceptable, but had become visibly hostile when other jurors were dismissed and he was not. The court noted that although the state may have seen something it did not, juror number 57 did not appeal hostile to the court. Prior to selection of the second alternate, the state later struck another black juror, juror number 18. The defense again requested an inquiry under Neil. The court noted that they were at the "very last part of this jury selection. We have I believe some five blacks seated on the jury." (It was later determined that four out of fourteen of jurors selected were black.) Although the trial court did not believe the state had "systematically struck" black jurors, the court inquired of the state. The state explained that juror number 18 was a "young, unemployed, single female" and there are no young, unemployed, single persons on the jury. The state again explained that it back struck juror number 57 because he appeared hostile. The court then ruled that "in accordance with the directions under Neil ... there is no backstriking and relieving jurors because of their race."
While the trial court used the term "systematic striking" in connection with its ruling, it is clear from the record that the trial court was following the dictates of Neil and was simply considering whether other blacks had been challenged in determining whether Roberts had established that there was a likelihood that the peremptory challenges resulted from impermissible bias. In Slappy, we reaffirmed and refined the standard adopted in Neil. In so doing, we noted that Neil "recognized a protection against improper bias in the selection of juries that preceded, foreshadowed and exceeds the current federal guarantees," as adopted in Batson. Slappy, 522 So.2d at 20-21. Counsel's failure to challenge jury selection based on Batson did not amount to deficient performance and in no way affected Roberts' appeal.
Accordingly, Roberts' petition for writ of habeas corpus is denied and the trial court's summary denial of Roberts' rule 3.850 motion to vacate judgment and sentence is affirmed.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, EHRLICH, GRIMES and KOGAN, JJ., concur.
BARKETT, J., concurs in result only.
NOTES
[1] State v. Neil, 457 So.2d 481 (Fla. 1984), clarified sub nom., State v. Castillo, 486 So.2d 565 (1986).