596 So.2d 991 (1992)
William Frederick HAPP, Appellant,
v.
STATE of Florida, Appellee.
No. 74634.
Supreme Court of Florida.
January 23, 1992.
Rehearing Denied March 9, 1992.
*992 James B. Gibson, Public Defender and Christopher S. Quarles, Asst. Public Defender, Seventh Judicial Circuit, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen. and Barbara C. Davis, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
William Frederick Happ appeals his convictions for first-degree murder, burglary of a conveyance with a battery therein, kidnapping, and sexual battery likely to cause serious personal injury, and his resulting sentences, including the imposition of the death sentence for the first-degree murder. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons expressed, we affirm Happ's convictions and sentences, including the death sentence.
The relevant facts indicate that on May 24, 1986, a fisherman found the partially clad body of a woman on the bank of the Cross-Florida Barge Canal in northwest Citrus County. The woman's shoulders were covered by a tee shirt that was pulled up to her underarms, and a pair of stretch pants were tied tightly around her neck. The medical examiner testified that her face and skull were badly bruised and hemorrhaged, that she had multiple scrapes on her back and right heel, that she had suffered ten to twenty hard blows to the head, and that she had been anally raped before death. The cause of death was found to be strangulation.
The victim had driven from Fort Lauderdale to Yankeetown to visit a friend. Several newspaper carriers claimed to have seen a small car at a Cumberland Farms store in Crystal River at approximately 2:40 a.m. on May 24, and to have heard a woman scream at approximately the same time. The victim's car was found on May 25 at a restaurant on U.S. Highway 19, approximately six-tenths of a mile south of the Cumberland Farms store. The window on the driver's side of the car had been shattered. The glass from the car was consistent with glass found at the Cumberland Farms store and at the canal where the victim's body was found. A shoe print found outside the driver's side of the car was later found to match one of Happ's shoes. Happ's fingerprints were also found on the exterior of the car.
Happ was indicted for first-degree murder, burglary of a conveyance with a battery therein, kidnapping, and sexual battery likely to cause serious personal injury. Happ's first jury trial ended in a mistrial caused by the prosecutor's violation of an order in limine prohibiting the State from revealing Happ's prior record. Before the second trial commenced, Happ filed a motion to dismiss the indictment on double jeopardy grounds. The motion was denied, and his petition to the Fifth District Court of Appeal for a writ of prohibition on this issue was also denied. At the second trial, a friend of Happ's testified that he had seen Happ walking down U.S. Highway 19 toward the barge canal at 11:00 p.m. on May 23, and that he saw Happ the next morning with a swollen right hand. Happ's former girlfriend testified that Happ had told her he broke a car window with his fist. Richard Miller, an inmate housed near Happ at the Citrus County Jail, testified at the first trial that Happ had described how he abducted a woman from a parking lot, took her to the canal, beat her, anally and orally raped her, and eventually strangled her. This testimony was read to the jury at the second trial because Miller refused to testify in that proceeding. The jury found Happ guilty of all charges.
At the penalty phase, the State produced evidence of Happ's prior convictions in California, including an incident of an abduction and armed robbery. The medical examiner testified that a person usually chokes for two minutes before losing consciousness and becomes brain dead after four or five minutes. An adult education teacher at the jail testified that Happ had average intelligence, knew right from wrong, was not mentally deficient, and helped teach math to other inmates. Happ's sister testified concerning Happ's age, poor upbringing, and drug and alcohol use. Happ's aunt testified that, when Happ lived with her, he looked for work *993 and helped her with her ailing husband. The jury in the penalty phase recommended the death penalty by a vote of nine to three.
The trial judge sentenced Happ to death for the murder of the victim and to three consecutive life sentences on the other three counts. The judge found the following four aggravating circumstances: (1) that Happ had prior convictions for violent felonies; (2) that the murder was committed during the commission of sexual battery, kidnapping, and burglary; (3) that the murder was especially heinous, atrocious, or cruel; and (4) that the murder was cold, calculated, and premeditated. The trial judge also found three mitigating circumstances, including Happ's age, family history, and educational aid to other inmates. The trial judge concluded that the mitigating circumstances were outweighed by the aggravating circumstances and imposed the death penalty.
Happ raises nine claims in his appeal of the guilt phase of his trial. Specifically, Happ claims that the trial court erred in: (1) denying his motion to dismiss the indictment on double jeopardy grounds; (2) denying his motion to suppress evidence of his statements to the police and the fruits thereof; (3) refusing to answer a question asked by the jury during deliberations; (4) restricting the presentation of evidence that Richard Miller had admitted to lying during his first testimony; (5) failing to find that the State did not express nonracial reasons for striking one of the members of the venire; (6) allowing the reading of Miller's testimony; (7) commenting on the evidence and limiting defense counsel's closing arguments; (8) refusing to allow defense counsel to refer to the key state witness as a "snitch" or "squealer"; and (9) that Happ was denied a fair trial due to the cumulative effect of numerous errors that occurred below. After fully examining this record, we find that claims (3), (4), (7), (8), and (9), are without merit and require no further discussion.
Happ asserts in his first claim that his second trial and conviction were barred by the Double Jeopardy Clause in the United States and Florida Constitutions. This claim arises from the prosecutor's mentioning that Happ had committed an armed robbery during the cross-examination of Happ's aunt in the first trial. Prior to Happ's first trial, and as a result of a defense motion, the trial court had entered an order in limine which provided as follows:
Unless the Defense mentions, refers to or attempts to convey to the jury the following described statements or facts, the State and all witnesses in the case shall not mention, refer to, interrogate concerning or attempt to convey to the jury, in an[y] manner whatsoever, either by testimony, inference, directly or indirectly, [the Defendant's prior criminal conviction record except for proper impeachment purposes] without first obtaining permission of the Court, outside of the presence and hearing of the jury.
During the cross-examination of Happ's aunt by the State, the following colloquy took place:
Q So you knew in January of 1987 Bill had been charged and was being extradited from California for that murder; correct?
A But they were only back there one time after that, and I told them then 
Q That you didn't know.
A  that Bill didn't  couldn't do anything like that.
Q I understand.
A They had never told me  they told me that something happened in Crystal River they thought he was mixed up in.
Q You said you knew he couldn't do anything like that.
A Yes, sir.
Q Do you know that he's committed armed robbery?
MR. PFISTER [defense counsel]: Objection, Your Honor.
THE COURT: Approach the Bench.
(Thereupon, the following proceedings were held at the Bench.)
THE COURT: What's your objection?
MR. PFISTER: Objection, Your Honor.

*994 Your Honor, out of the complete blue, Mr. King has gone out and said Mr. Happ is guilty of armed robbery or committed armed robbery. That's absolutely not invited at all. He's gone around and simply brought out the fact that Mr. Happ has been convicted of a crime. He's brought out the fact that Mr. Happ has been convicted of a crime. Absolute error for the State, Your Honor. I'd move for mistrial at this point. Absolute error. Prosecutorial misconduct.
THE COURT: Mr. King.
MR. KING: Your Honor, it's clear that she injected that into the cross examination.
THE COURT: It's clear I think you want a mistrial and you did it deliberate. I'll declare a mistrial.
After granting the mistrial, the trial judge filed a citation for direct contempt against the prosecutor and set a hearing on the matter for the following day. The prosecutor's attorney filed a motion to disqualify the trial judge from conducting the contempt proceedings, which was denied. At the hearing, the trial judge concluded that the prosecutor had a different understanding of the order in limine and that, since the propriety of the prosecutor's question was legally debatable, the prosecutor's vigorous advocacy did not rise to the level of direct criminal contempt.[1] The trial judge then entered an order expressly finding that the provisions of the order in limine were legally debatable as to whether they permitted the prosecutor to ask the question propounded and, thus, dismissed the contempt citation. The first trial judge then recused himself and a new trial judge was assigned to the case.
The second trial judge then held a hearing on the motion to dismiss on double jeopardy grounds based on the prosecutor's misconduct in causing the mistrial. The second trial judge denied the motion, finding as follows:
1. Reasonable attorneys and reasonable trial court judges could disagree as to the propriety of the question concerning the defendant's prior criminal conviction being propounded to the defense witness in the context in which it was presented.
2. Given the conclusion contained in paragraph # 1, the court cannot find that by asking the question the state attorney intentionally engaged in conduct designed to provoke a mistrial or that his conduct rose to the level of gross negligence sufficient to provoke a mistrial.
Happ then petitioned for a writ of prohibition in the Fifth District Court of Appeal. In denying the petition, the district court, in Happ v. Lockett, 543 So.2d 1281 (Fla. 5th DCA 1989), stated:
In the instant case, Judge Thurman's observation that the prosecutor intentionally caused a mistrial, even if considered a finding of fact, cannot be elevated to the status of a final order with greater stature or dimension than an interlocutory order. Judge Thurman's finding, if it was such, was not necessary in order to support his grant of a mistrial and it was never reduced to a final order of dismissal of the charges against Happ, since Judge Thurman left the case before such dismissal was sought by the defense.
We agree with the petitioner that Judge Lockett erred in concluding that it was "reasonable" for the prosecutor to pose the question which triggered the mistrial originally. The question was clearly improper and Judge Thurman so held at the time. That determination was final and could not be revisited by Judge Lockett. Nevertheless, the second paragraph of Judge Lockett's order constitutes a determination that the question by the state attorney in the first trial was not intentionally designed to provoke *995 a mistrial. The latter issue was properly before Judge Lockett by virtue of the defense motion to dismiss filed on January 30, 1989. Although it appears that Judge Thurman may well have made a different legal determination had this matter been presented to him, we cannot find that Judge Lockett's denial of the motion to dismiss lacks record support. The trial prosecutor testified at the evidentiary hearing held on the motion to dismiss that his offending question was motivated by his conception of the law of impeachment rather than an intent to provoke a mistrial. That testimony apparently was credited by Judge Lockett, which was his prerogative.
Id. at 1283-84.
In Oregon v. Kennedy, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), the United States Supreme Court explained that, when a defendant requests a mistrial, the double jeopardy clause is not a bar to the retrial, except in those instances where it is established that the judge or prosecutor, by his or her conduct, caused the defendant's motion for a mistrial, and the conduct of the judge or prosecutor "was intended to provoke the defendant into moving for a mistrial." Id. at 679, 102 S.Ct. at 2091. The Court unambiguously explained that, while the conduct of the prosecutor might justify a mistrial, a retrial is not barred unless there was intent on the part of the prosecutor to cause a new trial.
We find that Happ has failed to establish that the prosecutor, by asking the questions, intended to force defense counsel to seek a mistrial. Although the first trial judge initially found the question was in violation of his order, he subsequently concluded that it was legally debatable whether the question was covered by the order and dismissed the contempt citation against the prosecutor. We agree with the district court of appeal that the second trial judge had sufficient evidence before him at an evidentiary hearing to find that the question by the prosecutor in the first trial was not intentionally designed to provoke a mistrial and that the trial judge's holding denying the dismissal of the cause was correct.
Happ's second point concerns the trial court's denial of his motion to suppress statements he made to two Florida investigating officers concerning this case while he was incarcerated on robbery and kidnapping charges in California. The California charges on which he was incarcerated were unrelated to the Florida investigation. The investigators were aware that Happ was represented by California counsel on the California robbery and kidnapping charges. The Florida officers advised Happ of his Miranda[2] rights, after which he signed a waiver and agreed to talk to them concerning the Florida offense. The only statement made by Happ to the investigators which was introduced at trial was a denial by Happ of any knowledge of why his fingerprints were found on the victim's car. Happ claims that the statement should be suppressed because the investigating officers did not advise him that he had a right to confer with his California lawyers before being interviewed. The trial judge denied the motion to suppress, finding that Happ knowingly, intelligently, and voluntarily waived his Miranda rights prior to the questioning, as evidenced by the investigator's testimony and the signed waiver. The trial judge found that Happ had not invoked his Fifth Amendment rights and had voluntarily waived them. Furthermore, he held that, although Happ was represented by counsel in his unrelated California cases, the United States Supreme Court's decisions in Arizona v. Roberson, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), and Michigan v. Jackson, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), did not preclude the Florida investigating officers from questioning Happ in regards to the Florida crimes after Happ had validly waived his Fifth Amendment rights.
Happ argues that, once a defendant invokes his Sixth Amendment right to counsel on pending criminal charges, this right also applies to any subsequent interrogation on any unrelated investigation. He *996 contends that his requests for counsel in Pennsylvania and California on the California charges require that no interrogation on any unrelated crimes can be initiated by officers from other states under Roberson and Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). We disagree. We find that the United States Supreme Court's decision in McNeil v. Wisconsin, ___ U.S. ___, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), answers the question contrary to Happ's view. That Court held that a person's Sixth Amendment right to counsel does not attach until the initiation of adversarial proceedings and is offense-specific. It explained:
It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced... . And just as the right is offense-specific, so also its Michigan v. Jackson effect of invalidating subsequent waivers in police-initiated interviews is offense-specific.
Id. at 2207. Because adversarial proceedings had not been initiated against Happ on the Florida crimes when the questioning occurred, the fact that he was represented by counsel on unrelated charges in California did not invoke his Sixth Amendment right to counsel in regards to the investigation of the Florida crimes. The critical factor is the voluntariness of the waiver. No Fifth Amendment right to counsel existed, and, once Happ properly waived his Miranda rights, the statements were admissible. Accordingly, we conclude that the trial court did not err in denying Happ's motion to suppress the statements made to the Florida investigators.
The next claim that merits discussion is Happ's fifth claim in which he asserts that the State failed to offer valid, nonracial reasons for striking a black juror. After the State exercised a peremptory challenge, defense counsel objected. The state attorney responded by explaining that the juror, as a psychology teacher at a community college and a Catholic, was more liberal than people in other professions and would be inclined not to believe in the death penalty. Counsel for the defendant did not contest these reasons, and we find that the trial court properly, within its discretion, accepted these reasons as race-neutral. The State does not have to establish grounds sufficient to have the juror excused for cause. We conclude that the trial court was within its discretionary authority to accept the reasons given by the State as race-neutral. We find no violation of State v. Neil, 457 So.2d 481 (Fla. 1984), clarified, State v. Castillo, 486 So.2d 565 (Fla. 1986); State v. Slappy, 522 So.2d 18 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988), and their progeny.
In his sixth claim, Happ asserts that the jailhouse informant's testimony regarding his unavailability to testify at trial should not have been presented to the jury. The issue relates to the appropriateness of the preamble explaining why the witness was unavailable, not the unavailability of the witness. Counsel for both the State and Happ had an opportunity to examine the witness prior to the second trial. This examination revealed that the witness was mentally and physically unable to testify, having been stabbed and gang-raped and suffering a nervous breakdown while in prison. The witness was at the time scheduled to start physical therapy and psychological counseling. The trial court found that the witness was unavailable to testify and ruled that his testimony at the first trial could be read to the jury, including Miller's explanation of why he could not be present to testify. Given this record, we find that the trial court did not abuse its discretion in allowing this evidence to be presented in this manner under these circumstances. Jent v. State, 408 So.2d 1024 (Fla. 1981).

Penalty Phase
In the penalty phase, Happ claims that the trial court erred in: (1) refusing to admit evidence of plea negotiations; (2) finding that the murder was especially heinous, atrocious, or cruel; (3) failing to hold that the death penalty was disproportionate to the facts of the case; and (4) in failing to find that death penalty unconstitutional. Happ's only point with regard to the penalty *997 phase that merits discussion concerns the use of the aggravating circumstance that the murder was committed in a cold, calculated, and premeditated manner. While there is no question that the other aggravating circumstances have been clearly established beyond a reasonable doubt, we must agree with Happ that the State presented no evidence to illustrate any prior calculation or prearranged plan or design to establish the cold or calculating elements of this aggravating circumstance. The elimination of this aggravating circumstance does not eliminate any facts and circumstances that could appropriately be considered in the sentencing process in imposing the death penalty. Given the record and the other established aggravating circumstances, we find that the elimination of this circumstance would not have changed the sentence imposed in this case. The remaining claims are without merit and require no discussion.
Accordingly, Happ's convictions and sentences, including the sentence of death, are affirmed.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD and GRIMES, JJ., concur.
BARKETT, J., concurs in result only with an opinion, in which KOGAN, J., concurs.
KOGAN, J., concurs in part and dissents in part with an opinion.
BARKETT, Justice, concurring in result.
I believe that the statement obtained by Florida investigating officers while Happ was incarcerated in California was obtained in violation of Happ's right to counsel under article I, section 9 of the Florida Constitution. When Happ attended first appearance in California on the robbery and kidnapping charges, he requested and received appointment of counsel. For the reasons expressed in my partial dissenting opinion in Traylor v. State, 596 So.2d 957 (Fla. 1992) (Barkett, J., concurring in part, dissenting in part), I would find that police were thereafter prohibited from initiating questioning of Happ as to any offense and thus his statement was inadmissible. However, in light of the physical evidence at trial as well as the nature of the statement itself, I would find its admission was harmless beyond a reasonable doubt.
KOGAN, J., concurs.
KOGAN, Justice, concurring in part, dissenting in part.
I dissent from that portion of the majority opinion finding Happ's statements to the Florida authorities admissible, for the reasons expressed more fully in my partial dissent to Traylor v. State, 596 So.2d 957 (Fla. 1992) (Kogan, J., concurring in part, dissenting in part). I agree with Justice Barkett, however, that the error was harmless.
NOTES
[1] The pertinent part of the trial judge's order reads as follows:

1) The Court has determined that the orders in limine of the Court were legally debatable as to whether Mr. King could have asked the question propounded.
2) Since the matter was legally debatable the Court finds that the conduct of Mr. King cannot, as a matter of law, rise to the level of direct criminal contempt.
3) The Citation for Direct Criminal Contempt is hereby dismissed... .
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).