784 So.2d 1091 (2001)
William Frederick HAPP, Petitioner,
v.
Michael W. MOORE, Secretary, Florida Department of Corrections, Respondent.
No. SC00-1198.
Supreme Court of Florida.
May 3, 2001.
*1093 John W. Moser, Capital Collateral Regional Counsel-Middle Region, Michael P. Reiter, Chief Assisant CCRC, and Dwight M. Wells, Assistant CCRC, Office of the Capital Collateral Regional Counsel Middle Region, Tampa, FL, for Petitioner.
Robert A. Butterworth, Attorney General, and Stephen R. White, Assistant Attorney General, Capital Appeals, Tallahassee, FL; and Judy Taylor Rush and Kenneth S. Nunnelley, Assistant Attorneys General, Daytona Beach, FL, for Respondent.
PER CURIAM.
William Frederick Happ petitions this Court for writ of habeas corpus. We have jurisdiction. Art. V, § 3(b)(9), Fla. Const. For the reasons stated below, we deny Happ's petition.

PROCEDURAL HISTORY
The facts in this case are set forth in greater detail in Happ v. State, 596 So.2d 991 (Fla.1992). Briefly stated, the victim's body was found on the bank of the Cross Florida Barge Canal in Citrus County. She had been strangled, beaten and raped prior to death. The cause of death was strangulation. Happ's first trial ended in a mistrial because the prosecutor violated an order in limine. At the second trial, the jury convicted Happ of first-degree murder, burglary of a conveyance with a battery therein, kidnaping, and sexual battery likely to cause serious personal injury. On the first-degree murder charge, the jury recommended the death penalty by a vote of nine to three. See id. at 993. The judge sentenced Happ to death, finding four aggravating factors[1] and three mitigating factors.[2]
On appeal, this Court struck the trial court's finding as to CCP because the State presented no evidence to establish the cold or calculating elements of the aggravator. See Happ, 596 So.2d at 997. However, despite the elimination of the CCP aggravator, this Court affirmed Happ's convictions and sentence. See id. The United States Supreme Court vacated judgment and remanded the case to this Court for further consideration in light of Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992), concerning *1094 the jury instruction for the heinous, atrocious, or cruel aggravating factor. See Happ v. Florida, 506 U.S. 949, 113 S.Ct. 399, 121 L.Ed.2d 325 (1992). On remand, this Court found a challenge to the instruction on the grounds of vagueness had not been preserved for review because no objection on that ground had been asserted at trial. See Happ v. State, 618 So.2d 205 (Fla.1993). However, this Court ruled alternatively that were it to address the issue, it would find that the reading of the defective instruction was harmless and could not have affected the jury's recommendation because the facts supported a finding of HAC. Id. at 206. Thus, we concluded that "regardless of the instruction given, the jury would have recommended and the trial judge would have imposed the same sentence." Id.
Happ filed an amended motion for postconviction relief on October 12, 1995, in which he raised thirty-two claims.[3] After an evidentiary hearing on Happ's alleged Brady violation (claim III), the trial court denied Happ's motion for postconviction relief and Happ appealed. By order dated September 13, 2000, this Court dismissed the appeal without prejudice to allow Happ to further amend his 3.850 motion on four issues.[4] We affirmed the trial court's order on all other issues.
Prior to the issuance of this Court's order on the 3.850 appeal, Happ filed this *1095 petition for habeas corpus, in which he alleged four claims for relief based on ineffective assistance of appellate counsel. On October 31, Happ filed a supplemental petition for habeas relief, in which he alleged an additional instance of ineffective assistance of appellate counsel. Each of Happ's five claims will be addressed in turn.

ANALYSIS

Standard of Review
Claims alleging ineffective assistance of appellate counsel are properly raised in a petition for writ of habeas corpus, subject to the following rules and requirements. The requirements for establishing a claim based on ineffective assistance of appellate counsel parallel the standards announced in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "[The] [p]etitioner must show 1) specific errors or omissions which show that appellate counsel's performance deviated from the norm or fell outside the range of professionally acceptable performance and 2) the deficiency of that performance compromised the appellate process to such a degree as to undermine confidence in the fairness and correctness of the appellate result." Wilson v. Wainwright, 474 So.2d 1162, 1163 (Fla.1985); see also Freeman v. State, 761 So.2d 1055, 1069 (Fla.2000); Suarez v. Dugger, 527 So.2d 190 (Fla.1988). Counsel cannot ordinarily be considered ineffective under this standard for failing to raise issues that are procedurally barred because they were not properly raised during the trial court proceedings. See Rutherford v. Moore, 774 So.2d 637 (Fla.2000); Robinson v. Moore, 773 So.2d 1 (Fla.2000). Moreover, appellate counsel cannot be deemed ineffective for failing to raise non-meritorious claims on appeal, see Rutherford, or claims that do not amount to fundamental error. See Roberts v. State, 568 So.2d 1255 (Fla.1990) (holding that appellate counsel's failure to raise a claim which was not preserved for review and which does not present a question of fundamental error does not constitute ineffective performance warranting relief). Applying these rules to the case at hand, we conclude that Happ has not demonstrated a basis for relief.

Claim I
As his first claim in the initial petition, Happ argues that his appellate counsel was ineffective during the direct appeal because he failed to point out additional grounds for challenging the trial court's ruling concerning the admissibility of the testimony of a defense witness, Hugh Lee, who would have presented impeachment evidence against the State's witness, Richard Miller.[5] During the direct appeal, Happ's appellate counsel argued that the *1096 trial court erred in refusing to allow Lee to testify as an impeachment witness against Miller. In so arguing, counsel maintained that Miller was concerned that his prior testimony "would come back to haunt him," that he admitted to lying during his testimony at Happ's initial trial and that the state prosecutor had told him to lie. Happ now contends that appellate counsel did not go far enough-he should have also argued that Lee would have testified that Miller was given answers to the questions and that the reason he did not want to testify was not because he was sick, but because he was concerned about his own case and that his previous testimony could be used against him.
Contrary to Happ's assertion, however, appellate counsel argued the alleged omitted facts. Appellate counsel provided the following facts in the initial brief filed on Happ's behalf:
Miller told Lee that his testimony at Happ's trial might come back to haunt him in the event that Miller somehow received a new trial.... Miller then admitted that he had lied during his testimony at Happ's trial. He also revealed that Brad King, the prosecutor in Happ's trial, told Miller to lie. Specifically, King told Miller to answer negatively if he was questioned about asking for a lawyer before speaking to law enforcement officials.
Appellant's Initial Brief at 55-56, Happ v. State, 596 So.2d 991 (Fla.1992) (No. 74634) (references to record omitted). In arguing to this Court that the trial court erred in excluding Lee's testimony, appellate counsel made the following points:
Appellant reminds this Court that Richard Miller's testimony was absolutely critical to the state's case. Miller's testimony provided the only confession allegedly made by Happ. Miller's testimony provided the only details of the crimes charged. Without Miller, the state had no case. As such, Richard Miller's credibility was of paramount importance. Hugh Lee's testimony, if allowed by the trial court, would have destroyed what little credibility Richard Miller had. If Lee had testified, the jury would have heard Miller's admission that he lied under oath. The subject matter of the lie is of no import. A bald admission that one has committed perjury is evidence of paramount importance when the case turns on that witness's credibility. The jury also would have heard that the prosecutor suborned perjury, a charge that the prosecutor never denied.

Id. at 56-57 (emphasis added).
The brief filed on Happ's behalf conclusively demonstrates that his appellate counsel argued that Miller admitted to lying, that the prosecutor allegedly had provided him with answers to certain questions (regarding legal representation), and that Miller was concerned about his testimony being used against him in the event he received a new trial. The brief further reflects that appellate counsel argued the *1097 fact that the prosecutor suborned perjury, which clearly relates to the allegations that Miller lied and the prosecutor had told him to do so. Thus, Happ's claim that appellate counsel failed to argue certain points on appeal is without merit as the record in this case clearly refutes this claim.[6] Rather, it appears that Happ is using this writ to reargue the trial court's order excluding Lee's testimony because he is dissatisfied with the outcome on direct appeal. The writ of habeas corpus is not to be used to reargue issues which have been raised and ruled upon by this Court. See Rutherford; Roberts v. State, 568 So.2d 1255, 1261 (Fla. 1990).

Claim II
Next, Happ argues that appellate counsel failed to argue on direct appeal that the State had improperly retained a defense mental mitigation expert during the trial court proceedings. The record reflects that on March 2, 1987, the trial court appointed Dr. Krop as a confidential expert to evaluate Happ and to assist the defense in preparation of the defense's case pursuant to rule 3.216(a) of the Florida Rules of Criminal Procedure.[7] Happ was first tried in January 1989. Prior to trial, however, the defense deleted Dr. Krop's name from its witness list and Dr. Krop was not called to testify. Happ was retried in July of 1989. Dr. Krop did not testify during that trial.
Prior to the second trial, the State filed a petition for payment of expert fees alleging that:
1. It is the opinion of the State Attorney that the service performed by said aforementioned doctor [Dr. Harry Krop] was in the form of expert service.
2. That it was necessary and expedient in the interest of justice to have the above expert perform said service which was relevant and pertinent to the issues in the above-entitled cause.
Petition for Expert Fees, State v. Happ, No. 88-1037-CF (Fla. 5th Cir.Ct. Apr. 4, 1989). This motion was filed April 4, 1989, approximately two years after Dr. Krop was appointed to assist the defense, but prior to the second trial in this case. The State concedes that Dr. Krop was listed as a witness for the State.
In the petition to this Court, Happ initially alleged that defense counsel was unaware of the State's retention of Dr. Krop. He further alleged that appellate counsel should have noted this apparent conflict of interest in the record, notwithstanding the fact that trial counsel was unaware of the issue, and should have raised it on appeal. However, during oral argument, Happ's counsel conceded that upon closer examination *1098 of the record, it was discovered that defense counsel indeed was aware of the State's retention of Dr. Krop.
We find this claim to be without merit. Although defense counsel apparently knew that the State had retained Dr. Krop, he did not object or move to strike Dr. Krop from the State's witness list. Therefore, the issue was not preserved for appeal. An appellate counsel may not be deemed ineffective for failing to raise an unpreserved issue on appeal. See Freeman, 761 So.2d at 1070; Roberts, 568 So.2d at 1261.

Claim III
In claim three of the petition, Happ argues that appellate counsel failed to point out in the motion for rehearing that this Court had relied on inaccurate facts. He claims that, contrary to the facts stated in the majority opinion, (1) the record does not indicate that the shoe found outside the victim's car matched Happ's shoe; (2) witness Ambrosino testified that Happ was at Holiday Drive and Highway 44, not Highway 19; (3) witness Ambrosino merely stated that he "believed" Happ's hand was swollen; and (4) Happ's girlfriend testified that Happ had told her about breaking a car window prior to the murder in this case, not the victim's window. Happ argues that had appellate counsel pointed out these errors to the Court in the motion for rehearing, as well as arguing that the trial court erred in refusing to allow Lee to testify during the trial, this Court would have had a substantially different picture of Happ's trial.
To properly analyze Happ's claim, we consider each statement in turn.
Statement One: This Court's opinion on direct appeal states: "A shoe print found outside the driver's side of the car was later found to match one of Happ's shoes." Happ, 596 So.2d at 992. The crime lab analyst who examined the shoe print found at the scene of the crime, however, was unable to say with certainty that Happ's tennis shoe made the track impression of the shoe print. His opinion was simply that Happ's shoe could have made the impression. The reason he could not be certain was because the shoe print did not contain enough individual characteristics to differentiate it from any other tennis shoe of the same make and design. Thus, Happ is correct that the factual statement in our opinion was inaccurate.
Statement Two: This Court's opinion states: "[A] friend of Happ's testified that he had seen Happ walking down U.S. Highway 19 toward the barge canal at 11 p.m. on May 23...." Id. Upon review of the record, we agree that this statement is not quite accurate. The "friend," Vincent Ambrosino, actually testified that on Friday, May 23, he last saw Happ at Holiday Drive and Highway 44. According to Ambrosino, Happ was walking in the direction of his house, which was located on Highway 19. The barge canal was located past Happ's house, heading in the same direction. Ambrosino last saw Happ at 11 p.m.
Statement Three: Our opinion states that Happ's friend "saw Happ the next morning with a swollen right hand." Id. This fact accurately reflects the record. Ambrosino testified that Happ had shown him his hand and that it was red and swollen. Happ concedes in his reply brief that this claim was made in error and that this Court's factual account is correct.
Statement Four: As to the final alleged misstatement, our opinion states: "Happ's former girlfriend testified that Happ had told her that he broke a car window with his fist." When read in context of the factual findings in the opinion,[8] this statement *1099 incorrectly suggests that Happ told his girlfriend that he had punched the victim's car window. The record reflects that Happ's girlfriend, Jean Marie Pinko, testified that while she and Happ were living in Pennsylvania, he told her that he had once broken a car window with his fist. However, this conversation occurred in Pennsylvania prior to the crime in this case. Thus, to the extent this Court's statement gave the impression that Happ's girlfriend was referring to the victim's car window, such statement was inaccurate.
The Florida appellate rules provide that appellate counsel may notify this Court of any errors or misstatements in the opinion by filing a motion for rehearing or clarification.[9] However, we conclude that counsel's failure to do so in this case did not cause counsel's overall performance to be outside the wide range of professionally acceptable performance. While counsel could have raised these factual misstatements in the motion for rehearing, counsel is not deemed ineffective for failing to do so because not every conceivable claim must be raised. Cf. Kokal v. Dugger, 718 So.2d 138, 143 n. 18 (Fla.1998). Further, even if counsel had notified this Court of the misstated facts, they would not have altered this Court's conclusion. The facts, once corrected, reveal that the shoe print found at the scene of the crime was consistent with shoes worn by Happ, that Happ was last seen walking in the direction of the barge canal around 11 p.m. on the night in question, and that the next morning Happ's right hand was red and swollen. Finally, Happ's former girlfriend established that Happ had punched in a car window with his fist on a prior occasion, a fact similar to what the State alleged happened in the instant case. Thus, the corrected facts do not significantly alter the events believed to have occurred in this case. Indeed, none of these facts were relied upon by this Court in resolving the legal claims raised by Happ on direct appeal. Finally, none of these facts affect Miller's testimony or his allegedly questionable credibility.[10] Accordingly, we find this claim to be without merit as Happ has failed to demonstrate that his "appellate counsel's performance deviated from the norm or fell outside the range of professionally acceptable performance" or that counsel's omission "compromised the appellate process to such a degree as to undermine confidence in the fairness and correctness of the appellate result." Wilson, 474 So.2d at 1163; see also Rutherford; Freeman.

Claim IV
In claim four, Happ argues that appellate counsel rendered ineffective assistance of counsel by failing to argue that the trial court erred in finding Miller unavailable to testify. He claims that he was deprived of his constitutional right to confront the witnesses against him because the trial court allowed Miller's former testimony in evidence in lieu of his testifying in person. Happ further maintains that appellate *1100 counsel failed to argue that the trial court's reliance on section 90.804(1)(b), Florida Statutes (1989), was error because that section does not apply in this case. Rather, Happ contends that the trial court should have followed rule 3.640 of the Florida Rules of Criminal Procedure which sets forth grounds for using former testimony in a new trial. Because none of the requirements of rule 3.640 were met, Happ claims the trial court erred in allowing Miller's former testimony to be read to the jury.
The record reflects that appellate counsel argued on direct appeal that the trial court erred in admitting Miller's testimony concerning his reasons for not being able to testify in person. Miller's testimony had been taken outside the presence of the jury and then later read to the jury after the judge had determined that Miller was unavailable to testify. Appellate counsel did not argue on direct appeal that the trial court erred in finding Miller to be unavailable and in permitting his former testimony to be read to the jury. Thus, this claim is properly before the Court.
However, contrary to Happ's assertion, trial counsel did not object to Miller's unavailability or to the admission of Miller's former testimony. Trial counsel's objection concerned only the admission of Miller's reason for his unavailability to testify. In fact, trial counsel conceded that the court could find Miller unavailable to testify under section 90.804(1)(b) of the Evidence Code (stating that a witness is unavailable where he or she "[p]ersists in refusing to testify concerning the subject matter of the statement despite an order of the court to do so"). At the time Miller's testimony was read to the jury, trial counsel did not object. Thus, trial counsel did not preserve the specific arguments now raised by Happ in this petition. As such, appellate counsel cannot be faulted for failing to raise claims that were not preserved for appeal. See Roberts, 568 So.2d at 1261.
As noted above, however, "an exception may be made where appellate counsel fails to raise a claim which, although not preserved at trial, presents a fundamental error." Robinson, 773 So.2d at 4; see also Roberts, 568 So.2d at 1261. Happ asserts the trial court committed fundamental error by admitting Miller's former testimony instead of requiring Miller to testify in person because Happ was deprived of his constitutional right to confront Miller. He further argues that the trial court misapplied section 90.804 and that the trial court should have relied on rule 3.640 of the Rules of Criminal Procedure. We note that Happ raised these same arguments, albeit in a cursory manner, in his appeal from the denial of his 3.850 motion (i.e., that trial counsel was ineffective for failing to object to the admission of Miller's former testimony). The trial court denied relief on this claim and this Court affirmed that decision in its order of September 13, 2000. Happ v. State, 770 So.2d 158 (Fla.2000). Happ's habeas petition appears to be an attempt to reargue the same issues, but this time under the guise of ineffective assistance of appellate counsel. See Kokal, 718 So.2d at 143-44.
As for the merits of the claim, we find that Happ's contention that he was deprived of his constitutional right to confront Miller under the circumstances of this case does not rise to the level of fundamental error and, therefore, is without merit. In Thompson v. State, 619 So.2d 261 (Fla.1993), this Court held that where a party intends to admit former testimony of a witness, the confrontation clause requires that the party against whom the testimony is admitted "have an opportunity at the prior proceeding to cross-examine the witness." Id. at 265. If *1101 the party challenging the admission of former testimony had the opportunity to cross-examine the witness, there is no confrontation clause violation. See id.
Here, Miller testified at the first trial. During that trial, defense counsel cross-examined Miller. At the second trial, Miller's entire trial testimony, including cross-examination, was read to the jury. Therefore, under Thompson, there does not appear to be a patent confrontation clause violation and the trial court did not abuse its discretion in allowing Miller's former testimony to be read to the jury. Even if this argument had been raised on direct appeal, it appears that this Court would have found the claim to be without merit. Appellate counsel cannot be faulted for failing to raise a meritless claim on appeal. See Kokal.
As for Happ's second contention, that the trial court misapplied section 90.804 of the Evidence Code, we find that claim to be without merit as well. Section 90.804 states:
(1) DEFINITION OF UNAVAILABILITY. "Unavailability as a witness" means that the declarant:
(a) Is exempted by a ruling of a court on the ground of privilege from testifying concerning the subject matter of his statement;
(b) Persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so;
(c) Has suffered a lack of memory of the subject matter of his statement so as to destroy his effectiveness as a witness during the trial;
(d) Is unable to be present or to testify at the hearing because of death or because of then existing physical or mental illness or infirmity; or
(e) Is absent from the hearing, and the proponent of his statement has been unable to procure his attendance or testimony by process or other reasonable means.
However, a declarant is not unavailable as a witness if such exemption, refusal, claim of lack of memory, inability to be present, or absence is due to the procurement or wrongdoing of the party who is the proponent of his statement in preventing the witness from attending or testifying.
§ 90.804, Fla. Stat. (1989). As noted above, trial counsel conceded that the court could admit Miller's former testimony under subsection (1)(b) (refusal to testify).
The record reflects that Miller recently had been stabbed and gang-raped while in prison in Oklahoma, that he was currently recovering from that incident, and that he was undergoing physical therapy and psychological counseling as a result of the incident. Miller testified that he was emotionally and physically unable to testify and that he did not care that his refusal to testify would subject him to additional jail time; he was currently serving a twenty-three-year sentence of imprisonment. Thus, Miller made it quite clear to the court that he was not going to testify despite the possibility of fines or imprisonment. Under these circumstances, a court order would have been futile. Accordingly, Happ's claim that the trial court misapplied section 90.804 is without merit. See Stano v. State, 473 So.2d 1282, 1286 (Fla. 1985) (holding that trial court did not abuse its discretion in declaring parents of victim unavailable under section 90.804(1)(b) where parents repeatedly refused to testify despite threat of imprisonment or fines). Appellate counsel cannot be deemed ineffective for failing to raise a non-meritorious claim on direct appeal. See Kokal, 718 So.2d at 142.
Finally, Happ argues that the trial court should have applied rule 3.640 of the Florida Rules of Criminal Procedure in *1102 determining whether to admit Miller's former testimony. Trial counsel did not raise this argument to the trial court; therefore, this specific argument was not preserved for appellate review. As a result, appellate counsel may not be faulted for failing to raise this argument on appeal. See Freeman.
As for the merits of the claim, it is arguable whether rule 3.640(b) precludes the admission of Miller's former testimony in this case. Rule 3.640(b), which addresses the effect of granting a new trial, states in pertinent part:
(b) Witnesses and Former Testimony at New Trial. The testimony given during the former trial may not be read in evidence at the new trial unless it is that of a witness who at the time of the new trial is absent from the state, mentally incompetent to be a witness, physically unable to appear and testify, or dead, in which event the evidence of such witness on the former trial may be read in evidence at the new trial as the same was taken and transcribed by the court reporter.
Fla. R.Crim. P. 3.640(b) (emphasis added). The rule places definite limits on when former testimony may be admitted in a new trial. As Happ argues, the rule does not include within its list of circumstances a finding that the witness is "unavailable" based on a refusal to testify. In this respect, rule 3.640 appears to be stricter than section 90.804 (unavailability) with regard to the admissibility of former testimony. In other words, section 90.804 of the Evidence Code permits the admission of former testimony if the declarant is declared unavailable under one of the enumerated grounds, whereas rule 3.640 limits admissibility to one of the grounds stated therein, none of which includes "unavailable due to refusal to testify."
However, we need not decide whether rule 3.640 conflicts with section 90.804 of the Evidence Code because the record in this case supports the trial court's ruling under either provision. Rule 3.640 states that the former testimony may be read in evidence during the new trial if the witness is "physically unable to appear and testify." While the trial court did not so rule, the record supports a finding that Miller was physically unable to testify. He testified that he had been stabbed and gang-raped, that he was in pain, that as result of the attack he suffered a nervous breakdown, and that he was not mentally and physically able to testify. Based on Miller's testimony, had the trial court considered rule 3.640, it likely would have found Miller to be unavailable, and therefore his former testimony to be admissible, even under that rule. Therefore, we find Happ's claim to be without merit as the alleged errors do not rise to the level of fundamental error.

Supplemental Claim
In a supplement to his initial petition, Happ argues that appellate counsel failed to argue on appeal that the trial court's written final order did not conform with the court's oral pronouncement during the sentencing hearing and that the trial court failed to file the written order contemporaneously with its oral pronouncement of sentence as required by Grossman v. State, 525 So.2d 833 (Fla.1988).
The record reflects that the jury found Happ guilty of first-degree murder on July 28, 1989. The trial court reconvened on July 31, 1989, for the penalty phase of the trial where the jury recommended that Happ be sentenced to death. That same day, the trial court sentenced Happ to death. The record reflects that trial counsel did not object to this procedure.[11] In *1103 sentencing Happ, the trial judge read from a preliminary draft of a sentencing order which he had apparently prepared prior to the time the jury rendered its recommendation. After rendition of sentence, the court informed the attorneys that the preliminary draft of the sentencing order would be reduced to a final draft within the next few minutes. The court then asked if the parties wished to be heard on "anything else," to which both the State and the defense answered "no."
Thus, the record very clearly illustrates that trial counsel did not object to the trial court's oral pronouncement of sentence or the procedure utilized and disclosed by the court in rendering sentence. Because of trial counsel's failure to properly object, we conclude that appellate counsel cannot be deemed ineffective for failing to raise this issue on appeal. See Roberts, 568 So.2d at 1261.[12]

CONCLUSION
For the reasons asserted in this opinion, we hereby deny Happ's initial and supplemental petitions for writ of habeas corpus.
It is so ordered.
SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS, and QUINCE, JJ., concur.
WELLS, C.J., concurs in result only.
NOTES
[1] The aggravators included: (1) Happ was previously convicted of a prior violent felony; (2) the murder was committed during the commission of sexual battery; (3) the murder was especially heinous, atrocious, or cruel (HAC); and (4) the murder was cold, calculated and premeditated (CCP).
[2] These included: (1) Happ's age; (2) his family history; and (3) his educational aid to other inmates.
[3] These claims included: (1) Happ is deprived of effective representation because CCR lacks sufficient funds; (2) public records are being withheld; (3) State withheld evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and used misleading evidence in violation of Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), and as a result counsel was rendered ineffective; (4) ineffective assistance of counsel (guilt phase); (5) newly discovered evidence that Happ is innocent of the crime; (6) jury instruction on cold, calculated and premeditated aggravator violates Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992), and trial counsel was ineffective for allowing it to be read; (7) jury instruction on prior violent felony aggravator violates Espinosa and trial counsel was ineffective for not objecting; (8) heinous, atrocious or cruel aggravator is unconstitutionally vague and trial counsel was ineffective for not objecting; (9) murder committed during felony aggravator is unconstitutionally vague and counsel was ineffective for not properly litigating this issue; (10) trial court failed to find mitigating evidence established in the record; (11) prosecutor made improper and inflammatory comments; (12) jury was misinformed of its advisory role and counsel was ineffective for failing to object; (13) the penalty phase jury instructions shifted the burden of proof to the defendant and counsel was ineffective for failing to object; (14) newly discovered evidence established that State witness Richard Miller was working for the State and had lied during his prior testimony; (15) counsel was ineffective for failing to object to improper prosecutorial comments; (16) Florida's capital sentencing scheme is unconstitutional; (17) prosecutor improperly instructed jury that it must recommend death and counsel was ineffective for not objecting; (18) ineffective assistance of counsel (penalty phase); (19) the prohibition in the Florida Bar's Rules of Professional Conduct against interviewing jurors is unconstitutional; (20) juror misconduct; (21) trial court erroneously admitted illegally obtained statements and evidence; (22) police misconduct; (23) Happ's sentence is unreliable because of Miller's perjured testimony; (24) Happ was denied the ability to present crucial testimony on his behalf; (25) Happ was illegally extradited from California; (26) State improperly struck jurors based upon Catholic religion; (27) trial court failed to take a recess before imposing sentence and trial counsel was ineffective for not objecting; (28) jury was never sworn; (29) poor condition of record; (30) cumulative errors deprived Happ of fair trial; (31) the State unconstitutionally used jailhouse informants to obtain incriminating statements; and (32) prosecutorial misconduct and counsel was ineffective for failing to object.
[4] These issues include: (1) counsel's failure to investigate the origins of an unknown hair sample; (2) counsel's failure to investigate and present mitigating evidence; (3) counsel's failure to object or otherwise challenge the State's case; and (4) whether DNA evidence demonstrates Happ's innocence.
[5] As noted in the fact section of this opinion, Happ's first trial ended in a mistrial. During the initial trial in this case, witness Richard Miller testified for the State against Happ. Miller was a jailhouse informant who provided the only direct evidence against Happ as to how the crime occurred. According to Miller, Happ confessed to killing the victim.

During Happ's second trial, Miller refused to testify against Happ. On July 25, 1989, prior to opening remarks, the trial court heard Miller's reasons for not wanting to testify. Apparently, Miller had been attacked and gang-raped while imprisoned in a penitentiary in another state. On the basis of Miller's testimony, the trial court ruled that Miller was unavailable to testify. As a result, the trial court permitted the State to read to the jury Miller's testimony from the first trial.
Two days later, after Miller's former testimony had been read into evidence, but before the State had rested its case, Happ's attorney presented witness Hugh Lee who allegedly had proof that Miller had admitted to lying during his testimony at the initial trial. Lee was a public defender whom Miller had asked to speak with prior to the trial's commencement. The trial court ruled that the attorney-client privilege would not prevent Lee from telling the court what Miller had said and permitted trial counsel to proffer Lee's testimony. Lee testified that Miller had confessed to lying during his trial testimony, that prosecutor Brad King had provided him with answers to questions and that he was concerned that his testimony could be used against him if he were given a new trial. However, the questions to which Miller referred related to whether he had asked for an attorney. Miller did not admit to lying about evidence concerning Happ's involvement in the case. After hearing Lee's testimony, the trial court ruled that Lee's testimony was irrelevant and immaterial and, therefore, Lee would not be permitted to testify. Appellate counsel challenged the trial court's ruling on appeal. This Court rejected the claim as meritless without further discussion. See Happ, 596 So.2d at 993.
[6] Happ's claim that the trial court ruled prior to listening to Lee's testimony is likewise without merit. The record conclusively shows that the trial court ruled after hearing Lee's testimony. The only decision made by the trial court prior to Lee's proffered testimony concerned whether the attorney-client privilege prevented Lee from testifying as to what Miller had told him. The trial court ruled that such privilege was waived and then allowed Lee to proffer his testimony. Thus, this claim is without merit. Appellate counsel was not ineffective for failing to raise this argument on appeal.
[7] Rule 3.216(a) states:

(a) Expert to Aid Defense Counsel. When in any criminal case counsel for a defendant adjudged to be indigent or partially indigent, whether public defender or court appointed, shall have reason to believe that the defendant may be incompetent to proceed or that the defendant may have been insane at the time of the offense or probation or community control violation, counsel may so inform the court who shall appoint 1 expert to examine the defendant in order to assist counsel in the preparation of the defense. The expert shall report only to the attorney for the defendant and matters related to the expert shall be deemed to fall under the lawyer-client privilege.
[8] This Court's opinion on direct appeal states in pertinent part:

At the second trial, a friend of Happ's testified that he had seen Happ walking down U.S. Highway 19 toward the barge canal at 11:00 p.m. on May 23, and that he saw Happ the next morning with a swollen right hand. Happ's girlfriend testified that Happ had told her he broke a car window with his fist.
Happ, 596 So.2d at 992 (emphasis added).
[9] See Fla. R.App. P. 9.330(a) (1988) ("A motion for rehearing or clarification shall state with particularity the points of law or fact that the court has overlooked or misapprehended."). In this case, appellate counsel filed a motion for rehearing, but did not notify the Court of any errors in its factual recitation of the evidence.
[10] As part of this claim, Happ reargues the fact that appellate counsel erred in not challenging the denial of Lee's impeachment evidence.
[11] The record reflects the following colloquy:

THE COURT: All right. I intend to sentence at this time. Do I hear any objection,
Mr. King [prosecutor]?
MR. KING: No, sir.
THE COURT: Mr. Pfister [defense counsel]?
MR. PFISTER: No, your honor.
[12] In so holding, however, we do not wish to be interpreted as approving the procedure utilized by the trial court. In Grossman v. State, 525 So.2d 833 (Fla.1988), receded from on other grounds, Franqui v. State, 699 So.2d 1312 (Fla.1997), this Court held "all written orders imposing a death sentence [shall] be prepared prior to the oral pronouncement of sentence for filing concurrent with the pronouncement." Id. at 841 (emphasis added). "The purpose of this requirement is to reinforce the court's obligation to think through its sentencing decision and to ensure that written reasons arc not merely an after-the-fact rationalization for a hastily reasoned initial decision imposing death." Perez v. State, 648 So.2d 715, 720 (Fla.1995).

In Spencer v. State, 615 So.2d 688 (Fla. 1993), we set forth the sentencing procedure for all trial courts to utilize in presiding over capital cases. Pursuant to this procedure, following a jury recommendation of death, the trial court must conduct a sentencing hearing, wherein the attorneys for the State and the defendant would be permitted to argue the existence of aggravating and mitigating circumstances and present additional evidence. After considering the attorneys' arguments, as well as the evidence and legal memoranda submitted, the trial court must recess to consider which sentence to impose. The obvious import of our decisions in Grossman and Spencer was to ensure that trial judges take the time to consider all relevant circumstances and arrive at an informed decision uninfluenced by haste and initial impressions. While Spencer had not yet been decided, we are troubled by the fact that the trial court here had prepared a sentencing order before the jury had even issued its recommendation.